## HOUTZ v. BOARD OF COMMISSIONERS OF UINTA COUNTY.

COUNTIES, CLAIMS AGAINST—CRIMES—JURISDICTION—JUSTICE OF THE PEACE—UNLAWFULLY BRINGING SHEEP INTO STATE—LIABILITY OF COUNTY FOR ILLEGAL ACT OF JUSTICE OF THE PEACE—FINES—ACTION FOR MONEY HAD AND RECEIVED—WAIVER—RELATION OF COUNTY TO CRIMINAL PROCEEDINGS — PROSECUTING ATTORNEY — LIABILITY OF COUNTY FOR UNLAWFUL ARREST—EVIDENCE—BURDEN OF PROOF—DURESS—VOLUNTARY PAYMENT.

1. The statute (R. S., Sec. 1216) providing that all claims and demands against a county shall be presented for audit and allowance to the county board, as provided by law, before any action, in any court, shall be maintained thereon, an action cannot be maintained upon a claim coming within the purview of such statute until the same shall have been duly presented to the board.

2. A Justice of the Peace has no jurisdiction to impose sentence upon one charged with an offense punishable by a fine of not less than $500, nor more than $1,000; but his only authority as to such an offense is to sit as a committing magistrate to determine whether the accused should be held to answer in the District Court, and, upon so ordering, to take a satisfactory recognizance for the appearance before said court of said accused, or, in default thereof, to commit him to jail until discharged by due course of law.

3. A Justice of the Peace has no jurisdiction to impose sentence upon one accused, under Section 2091, Revised Statutes, of unlawfully bringing sheep into the State without notifying the Board of Sheep Commissioners, as required by law. As to such an offense, the justice may act only as an examining magistrate and require the accused to answer before the District Court; since the fine authorized to be imposed is in excess of the jurisdiction of a Justice of the Peace.

4. A county is not liable in damages as for a tort for an unwarranted or illegal act of a Justice of the Peace in imposing sentence upon one accused of an offense in excess of his jurisdiction.

5. Where a Justice of the Peace has collected a fine imposed by him in excess of his jurisdiction, and has paid the same into the County Treasury, the county, if liable at all, is liable only for a return of the money, recoverable, if at all, in an action for money had and received.

6. The words "claims and demands," as used in Section 1216 of the Revised Statutes, the presentation of which for audit and allowance is required before an action can be maintained thereon, is probably to be understood as referring only to claims and demands for money, or for the payment of money.

7. The opinion is expressed that the words "claims and demands," as employed in Section 1216, Revised Statutes, embrace all claims and demands for money, so that the section is to be construed as requiring all claims and demands for money against a county to be presented to the county board for audit and allowance, before any action shall be maintained thereon.

8. A claim was not presented to the county board in such a manner as to authorize consideration, where claimant's attorney, by an unverified writing, demanded of the board the "recovery back" of a certain sum of money stated in the writing to have been paid into the County Treasury, that the same had been paid involuntarily and under duress by three persons named, and that the claimant was the assignee and legal holder of the claims; said writing not stating to whom or what officer the money had been paid, or the circumstances thereof, except as above.

9. Plaintiff sued as assignee of three other persons to recover certain money from the county claimed to have been collected from the assignors under duress and without authority of law as fines by a Justice of the Peace and paid into the County Treasury. Without filing any claim, or any demand in writing, the plaintiff, with his attorney, had appeared before the board, as shown by its records, in relation to the matter of the fine imposed upon him by a Justice of the Peace, and asked that the fine be refunded to him; and at the same time said attorney appeared for

certain other parties named fined by the same justice; and the board, having heard the complaints, considered that redress, if any, must be had in the District Court. Neither the plaintiff nor either of the other parties for whom his attorney was said to have appeared, were the assignors of the claims sued on. No other claim for the money sued for was presented except, at a subsequent meeting, plaintiff's attorney communicated in writing to the board demanding the money that had been paid by his assignors, naming them, which writing was unverified, and the communication was referred to the County Attorney to investigate and report. *Held,* that the board had not waived a compliance with the statutory requirements as to presentation of claims, by declining to allow the claims sued on upon other grounds than informality of presentation.

10. The act of the Prosecuting Attorney in signing and swearing to criminal complaints is not the act of the county as a body corporate and politic. In criminal cases the Prosecuting Attorney represents the State in whose name all prosecutions are conducted.

11. A county cannot be held to have caused an arrest and to have been responsible for criminal proceedings, from the fact that the Prosecuting Attorney signed and swore to the complaint and prosecuted the same; there being no evidence that the county board directed or authorized, or had any connection with the making of the complaints, or the prosecution of the accused.

12. The fact that the expense of criminal prosecutions occurring in a county is defrayed out of its treasury does not constitute the county the accuser whenever the Prosecuting Attorney prefers a criminal charge, and secures the conviction of a party for an offense against the penal laws of the State.

13. Whatever defects there may have been in a criminal proceeding resulting in the collection of a fine from the accused, the county is not answerable for the money so collected, in any event, unless it is shown to have been paid into the County Treasury.

14. It is incumbent upon a plaintiff seeking to recover money from a county alleged to have been unlawfully collected by a Justice of the Peace as a fine and paid into the County

Treasury, to show that the money claimed had been paid into the County Treasury, where the allegation to that effect has been denied by the answer.

15. The evidence examined, and held to be insufficient to show the payment of the money sued for into the County Treasury.

16. The principle is conceded that where there is an arrest for improper purposes, without a just cause, or an arrest for a just cause, but without lawful authority; or where there is an arrest for a just cause, and under lawful authority, for unlawful purposes—it may be construed to constitute duress.

17. The payment of a fine to obtain release from imprisonment cannot be deemed voluntary.

18. Where a party is accused of a misdemeanor before a Justice of the Peace, and that officer, mistaking his jurisdiction, imposes a fine upon a plea of guilty and collects the same, instead of ordering and recognizing the accused to answer before the District Court; and there has been no arrest of the accused, but he has appeared before the justice in response to a summons; if the payment of the fine was induced not because of threatened imprisonment, if the fine be not paid, or any actual constraint occasioned by the order of the justice, but by agreement, preferably to close the matter, rather than to appeal to the District Court, and so avoid further inconvenience and trouble, and the party is by such agreement allowed to depart upon paying the smallest penalty that could be inflicted in the proper forum, a finding would be warranted that the payment was voluntarily made.

19. Suit was brought to recover from the county certain fines alleged to have been imposed and collected by a Justice of the Peace in excess of his jurisdiction, and paid into the County Treasury. Upon the question whether the evidence discloses a voluntary or involuntary payment of the fine, or a payment under duress, no definite conclusion is announced, in view of a decision of the case upon other grounds; but the matter is discussed and the opinion expressed that, upon the evidence on that subject, the right to recover was at least doubtful.

[Decided December 9, 1902.]                    (70 Pac., 840.)

ERROR to the District Court, Uinta County, HON. DAVID H. CRAIG, Judge.

John S. Houtz instituted this action to recover from the Board of the County Commissioners of the County of Uinta the sum of $1,689, which amount it was alleged had been exacted by way of fines and costs from Hyrum Severson, Andrew Hudson and E. P. Houtz, assignors of plaintiff, under a void judgment of one N. B. Anderson, a justice of the peace of said county, and by said justice paid into the treasury of the county. The cause was tried to the District Court without a jury, and that court found generally for the defendant, and rendered judgment accordingly. The plaintiff thereupon brought proceedings in error. The material facts are stated in the opinion.

*L. R. Rogers, J. H. Ryckman* and *M. E. Wilson,* for plaintiff in error.

1. It is the contention of the plaintiff that the money sued for in this case was obtained by the county in a proceeding which was not merely irregular, but was irregular and absolutely void.

A justice of the peace in the State of Wyoming is without jurisdiction to try and determine any public offense in which the punishment prescribed by law exceeds a fine of $100 and imprisonment for six months in the county jail. (R. S., Sec. 5204.)

A judgment pronounced by a tribunal having no authority to determine the matter in issue is necessarily and incurably void. (1 Freeman on Judgments, Secs. 117, 120; 1 Black on Judgments, Secs. 170, 171, 218; Elliott v. Piersol, 1 Peters, 328.)

The Justice of the Peace Court is one of inferior limited jurisdiction and nothing is ever presumed in favor such jurisdiction.

2. The money sued for was paid by the plaintiff under compulsion. The evidence will show that the money was paid to prevent the imprisonment of the parties charged

with crime. The pretended arrest was not only groundless, but unlawful. That money paid to avoid or to obtain release from such an arrest is paid under duress and may be recovered back. (See Keener on Quasi Contracts, Sec. 5, p. 438, and authorities there cited.) That the county is liable. (See Kelly v. Rhoades, 63 Pac. Rep., 935; S. C., 51 Pac. Rep., 593.)

Some courts, for instance Board Commissioners Hamilton County v. Mighels, 7 Ohio St., 110, have held that the Board of County Commissioners are not liable in their quasi corporate capacity to an action for damages for injury resulting to a private party by their wrongful act. This case has no application where the property of another has been either wilfully or negligently appropriated to the use and benefit of the county. It was said in May v. The County of Logan, 30 Fed., 250, 259, "In such cases the benefit secured cannot be retained and enjoyed by setting up the wrongful act in obtaining it. To allow this would violate the plainest dictates of justice and common honesty."

Also in March v. Fulton County, 10 Wall., 576, 684, Justice Field, speaking for the Supreme Court of the United States, said: "We do not mean to intimate that liabilities may not be incurred by counties independent of the statute. Undoubtedly they may be. The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation." (See also 7 Ency. Law (2d Ed.), 953; R. S., Chap. 7, Sec. 4174.)

3. The money sued for has been paid over by the collecting officer and has been received to the use of the defendant.

4. The plaintiff has elected to proceed against the county and not against its officers. Such election, however, is a matter of defense and need not be alleged and proved. (Ware v. Percival, 14 Am. Rep., 565.)

These conditions being found to concur, the cause of ac-

tion in favor of the plaintiff is well grounded unless a presentment and demand of the money from the county is a condition precedent to the action.

*Is presentment necessary?* (Bartholomew Co. v. Ford, 27 Ind., 717; ·Village of Glencoe v. County Com. (Minn.), 41 N. W. Rep., 239; Cooley on Taxation, 815, and cases cited.)

·Upon the trial of the cause it was contended by counsel for defendant that a demand was required by the statutes of the State of Wyoming. To support this contention, counsel cited Sections 1062 and 1216.

It is the contention of the plaintiff in error that the provisions of the statutes cited have no *application in this case.* The accounts, claims and demands referred to in those provisions are those which are the results of contracts made by the county acting through its duly authorized agents, and have no application to claims arising out of tort. (Hollingsworth v. Saunders Co., 36 Neb., 41; 54 N. W., 79; County of Douglas v. Taylor, 70 N. W., 27.)

Cases in apparent conflict will be found not in point upon close examination of the statutes which they attempt to construe and interpret. For instance, Powder River Cattle Co. v. Custer Co., 22 Pac., 383. Claim to recover taxes. Presentment and demand held necessary under the statutes of Montana. Section 4288 expressly mentions the case of an aggrieved taxpayer, and brings him within the statute requiring presentment and demand of the County Commissioners. Fenton v. Salt Lake Co., 11 Pac., 601; 3 Utah, 423. This was a claim unliquidated for damages to property. The statutes of Utah required presentment and demand of *every claim, demand or right of aciton before bringing suit.* In Georgia, Mississippi, Texas and all other states where the decisions seem to be in conflict with the plaintiff's contention, the statutes are broader and the commissioner's court is differently organized, having a different and more extensive jurisdiction than in the State of Wyoming.

As a general proposition, the recovery back of taxes and the recovery back of money exacted as a fine by public officers under an unlawful and void criminal proceeding, would be governed by the same principles. (2 Dillon on Mun. Corp., Sec. 940.)

There is, however, this distinction, and it is material to this case. The laws of taxation are enacted for the purpose of raising revenue with which to run the government upon the theory that the person taxed is being benefited and protected by that government. Revenue is the primary object of taxation. It is a necessity to every government, and is a power incident to sovereignty.

Money collected under the criminal law is not primarily for the purpose of revenue. It is an exception for a citizen to violate the criminal law, and the fine imposed for such a violation is by way of punishment, the primary object being to prevent crime and not to raise revenue. All criminal statutes are strictly construed. The presumption is that every man is innocent of crime until proven guilty beyond a reasonable doubt at a fair and impartial trial before the court having jurisdiction of both the person and the subject matter.

A reading of Section 1062 will convince every honest judgment that it has to do only with contracts; that is, either express contracts or contracts implied in fact, and that it has nothing to do with contracts implied in law, or quasi contracts. The "specifications" required by that statute, the "separation of items" and the reference to the "performance of any service" make it conclusive that it has no application to a case arising out of wrong. Section 1063 prescribes a penalty. The penalty for a violation of Section 1062 is not that the "account" shall not be paid; it is not against the creditor; it does not render the allowance of that account void; but it is a penalty against the commissioners who allow the account in violation of Section 1062.

The policy of the law in this, Section 1063, is not to place a burden on the creditor for an unlawful act of the officer.

It places that burden where it belongs, on the officers who have violated the law. The language of Section 1216 is to be construed and interpreted in connection with Section 1062. It is incomplete without that section. No rational meaning can be gotten from it unless Section 1062 is considered as a limitation and modification of it. It provides in the commencement: "All claims and demands held by a person or persons, company or corporation, against a county, shall be presented for audit and allowance to the Board of County Commissioners of the proper county as *provided by law*," etc. Now, here is a direct and specific reference to Section 1062. In no other place in the statutes than in 1062 is there a provision for the presentment of claims to the County Commissioners, and as Section 1062 has reference only to claims arising out of contract, it is our contention that Section 1216 can have no broader application. No fund exists in any county for the settlement of demands arising out of tort. It is a fundamental presumption that every officer will do his duty, and there will be no tort. When there is one, however, it is an irregularity, and the compensation which the courts of justice decide the county shall pay for the wrong done must be created as each case arises. The purpose of these statutes is to prevent wrongful conduct on the part of the County Commissioners. It is a matter of common report that in many counties in many states the County Commissioners use their offices for their own unjust and unlawful enrichment. To prevent such conduct and to establish a correct and accurate system of records, statutes similar to those of Wyoming have been enacted in a majority of the states. An examination of these records will give publicity to the acts of the County Commissioners; and every citizen may know and see just where, how and for what the money of his county was expended; if he will but take the trouble he may know not only the contract, but each specific item of it; he may know the parties to it; he may know each specific amount that his county, through the commissioners, has bound itself to pay. Now,

in a case arising out of tort there need be and is no fund; the only thing which the plaintiff seeks to recover is his money. The county has it, the county obtained it wrongfully and unlawfully, and if the plaintiff recovers this judgment, not one cent of the people's money will be expended to satisfy it. The county holds this money to the plaintiff's use, and its detention is unlawful. For this reason the statutes under examination do not apply. The court, if it may be called a court, of County Commissioners is not so constituted as to be competent for the determination of controversies like the one in the case before the court. The questions here involved are those which should be and necessarily must be heard and determined in a court vested with general superior jurisdiction. If tried in such a court, there can be no opportunity for secret fraud. The questions involved are of such a character that an investigation and decision by the Board of County Commissioners would give satisfaction to neither the public nor the party aggrieved. (Stringham v. Board, 24 Wis., 594.)

The plaintiff contends that the presentment and demand made by his attorneys sufficiently complies with the requirements of the statutes giving them a construction broad enough to cover all cases. This demand was not verified as required by these provisions. If this case were within these statutes, no other objection could be made to this presentment and demand. The objection that the demand is not verified is clearly a technical one. It goes to the form of the demand. Such an objection must be specific. It must be made at the time the claim is rejected by the Board of County Commissioners. If that board rejects the claim upon any other ground, then the law is that all objections as to the form of the demand have been waived, and such objections cannot be raised for the first time in a superior court.

To support the second proposition we refer to the journal entry of the County Commissioners made by the clerk of the Board of County Commissioners: "After having heard

the complaints and being fully advised in the premises, the board considers that if any redress can be had, it must be in the District Court." · A complete examination of the evidence will show that this matter was fully considered by the Board of County Commissioners, and that the claim was rejected because the board believed and determined that it had no jurisdiction of the case. There is not a scintilla of evidence tending to show that any objection was made to the form of the presentment and demand made by the plaintiff through his attorneys. (Bradley v. Delaware Co., 57 Ia., 552; Clinton Co. v. Pace, 59 Ill. App., 576; Board v. Bondi, 23 Kan., 117; Taylor v. Canyon Co., 61 Pac., 521; Parker v. Supervisors, 1 Wis., 359; Speer v. Board, 88 Fed., 749.)

Great injuries will result to the plaintiff if this general judgment is sustained. If it is overruled justice may be done to both the plaintiff and the defendant. The fact that presentment was not made in due form verified upon oath can in no way prejudice the defendant. If, a general judgment upon the merits, such as has been rendered in this case, is sustained, the plaintiff will be forever barred from any remedy which he may have against the county. This fact is at least sufficient to show that the justice of this case is with the plaintiff.

*John R. Arnold,* County Attorney, *John C. Hamm* and *Beard & Ausherman,* for defendant in error.

We contend: (1) That no action can be brought or maintained in the District Court by the plaintiff against the defendant on these claims, because they were never presented to the board fully itemized and verified as required by the constitution and laws of the State. (2) That plaintiff's assignors never paid any money to the justice and never had any claim against the defendant in error. (3) That the money was paid voluntarily by John S. Houtz, John N. Ireland, and Johnson, Duckworth & Co., in settlement of a criminal or quasi criminal charge against other parties. (4) That the Board of County Commissioners

cannot waive the presentment of a full itemized statement in writing of claims against the county verified by affidavit, under the provisions of Article 16, Section 7, of the constitution. (5) That the county is not liable for money unlawfully collected by a justice of the peace.

The gist of plaintiff's contention in this action is that the presentment of the claim to the Board of County Commissioners, especially in the form of a verified statement as required by the statute (Sec. 1062), is not essential to the maintenance of his suit; and that this section refers to accounts which are "the result of a contract made by the county acting through duly authorized agents, and have no application to claims arising out of tort." It is evident, from a reading of plaintiff's brief, that counsel have entirely overloked Article 16, Section 7, of our constitution.

Under this provision of our constitution, every bill, claim, account or demand against the county must be presented. Under our law, the terms "claim" and "demand," as used in Section 1216 and in the constitution, cover every character of obligation which may arise concerning a thing which a claimant has not in his possession, but which he claims is wrongfully detained from him. (6 Ency. L. (2d Ed), 99.) "Claim" and "demand" are words of the broadest significance to express the right which one feels that he has to assert against another for that which that other detains from him. (Howell v. Buffalo, 15 N. Y., 523; Bourland v. Hildreth, 26 Cal., 205; Fordyce v. Godman, 20 O. St., 14; Ins. Co. v. Pierce, 1 Wyo., 50; Prigg v. Commonwealth of Pennsylvania, 16 Peters, 615.) "Claim" and "demand," as used in Section 1216 and in the constitution, mean the right that one has to make a demand or assert a right against another, so the contention that the plaintiff in error makes that the claims or demands referred to in any of the previous statutes are only those which are the result of contracts, falls to the ground under our statute. It is very conclusive that the claims and demands against the county arising out

of tort are subject to the same rule that obtains in any other right that may be asserted against the county.

The reason for this requirement is plain. It would be manifestly unjust not to give the Board of County Commissioners, who exercise the corporate authority, an opportunity to make recompense for any action by which any citizen felt aggrieved, before compelling the county to go to the trouble and expense of annoying litigation. And for the further reason that a record may be preserved open to inspection, showing on what account and for what purposes the public money is paid out, and that the public may have opportunity to see and know of the justness and reasonableness of the bills paid. The requirement for verification is to prevent frivolous and unjust claims from being made.

It is the filing of the statement that gives the board jurisdiction. The board is prohibited from auditing any claim until this is done. It cannot be waived. To say that the board, being prohibited from auditing, allowing or paying any claim until a verified statement is filed, and then to say that the board by doing the prohibited act can bind the county, would be to allow it to nullify the constitutional provision.

Following this provision of the constitution, Section 1216, Revised Statutes, provides that all claims and demands against a county shall be presented for audit and allowance to the Board of County Commissioners, "as provided by law, before any action in any court shall be maintained thereon," etc.

The petition in this case does not state a cause of action, because it does not state that a verified claim was presented to the board before the action was commenced. And for that reason defendant's motion for judgment on the pleadings should have been sustained. (Rhoda v. Alameda Co., 52 Cal., 350; Himmelman v. Danos, 35 Cal., 441.)

"When a pleader wishes to avail himself of a statutory privilege or right given by particular facts, he must show

the facts." (Dye v. Dye, 11 Cal., 167; Schroeder v. Colbert Co., 66 Ala., 137; Maddox v. Randolph Co., 65 Ga., 216; Bank v. Custer Co., 17 Pac., 551; Jones v. Bladen Co., 73 N. C., 182; Fenton v. Salt Lake Co., 11 Pac., 611.)

In the following cases it is held that claims must be presented before suit, and that under statutes none of which are as broad as our constitutional provisions. (Powder River Cattle Co. v. Custer Co., 22 Pac., 383; Yavapai Co. v. O'Neill, 29 Pac., 430; Rankin v. Jauman, 39 Pac., 512; McCann v. Sierva Co., 7 Cal., 121.)

Hollingsworth v. Saunders Co., 36 Neb., 141, is relied upon by plaintiff. It will be found upon examination that this was an action for damages caused by the falling of a bridge, and that the Nebraska statutes provided that the person sustaining damages from a defective bridge may recover, and that action should be brought within thirty days. In Village of Glencoe v. County Commissioners, 41 N. W., 239, cited by plaintiff's counsel, the question of presentment of claim before suit was not raised. The justice had jurisdiction of the cases as a committing magistrate, but not to impose a fine. (See further as to necessity of presenting claim: Bibbens v. Clark, 29 L. R. A., 278; 57 N. W., 884.)

The final reliance by the plaintiff in error seems to be upon the alleged fact that the Board of County Commissioners waived the presentment of the claim, and are now, therefore, estopped from setting up a non-presentation thereof as a defense to this action.

We have already shown in this brief that plaintiff's assignors never did make a claim, and the evidence shows clearly that no one ever made a claim of any kind in any form to the Board of County Commissioners for them for the amount now sought to be recovered. But outside of this proposition, and discussing briefly the point the plaintiff in error attempts to raise here, and supposing the question to be fairly raised, we ask, Can the Board of County Commissioners waive the plain provisions of the statute

and the constitution which requires the presentation of a
properly verified account before they can pass upon any
bill, claim or demand against the county? We are de-
cidedly of the opinion that that body has no power to
waive these provisions, for the reason that it is well settled
"that the right of waiver is subject to the control of public
policy, which cannot be set aside or contravened by any
agreement of the parties, however expressed." (28 Ency.
L., 533.) Here the question is one clearly relating to the
most essential relations of the public interests; and when
the law requires fundamentally in the constitution, as well
as by legislative enactment, that no bills or accounts against
a county shall be allowed or paid without the presentation
and verification of the amount, the County Commissioners
can no more be bound, nor can they bind the public, by
their failure to do or require that which the statute imposes
upon them, than that they could bind the public by any
other act of theirs already unwarranted and unauthorized.

The question at once arises whether the waiver by the
Board of County Commissioners would be against public
policy. If so, it is at once settled that there could be no
waiver, even if the board intended it. (White v. Life Ins.
Co., 4 Dill., 183; 28 Ency. L., 535.)

Aside from this well established authority that the Board
of County Commissioners cannot, under any consideration,
as public officers, waive a provision of the statute which
would be directly contrary to public policy as much as the
waiver of this statutory and constitutional requirement cer-
tainly is, there is another vital question involved in the con-
tention of the plaintiff in error when he raised this question
for the first time in the Supreme Court. Could there be a
waiver of this matter, the plaintiff in error was required to
have pleaded it in the first instance, but cannot raise it now.
Waiver of a condition incumbent upon one in the perform-
ance of his duty is in the nature of an estoppel, and it is a
well settled rule of pleading that an estoppel to be effective
must be plead. (28 Ency. L., 536.)

POTTER, CHIEF JUSTICE.

The question chiefly urged in this case is the right of
the plaintiff in error to recover from the county without
having previously presented his claim to the Board of
County Commissioners in the manner required by law for
audit and allowance.   The constitutional and statutory pro-
visions upon the subject are as follows:

"No money shall be paid out of the State Treasury ex-
cept upon appropriation by law and on warrant drawn by
the proper officer, and no bills, claims, accounts or demands.
against the State, or any *county* or political sub-division,.
shall be audited, allowed or paid until a full itemized state-
ment in writing, verified by affidavit, shall be filed with the.
officer or officers whose duty it may be to audit the same."
(Constitution, Art. 16, Sec. 7.)

"The Board of County Commissioners of each county
shall have power at any meeting: . . . . To examine and.
settle all accounts of the receipts and expenses of the
county, and to examine, settle and allow all accounts charge-
able against the county, and when so settled and allowed,.
they may issue county orders therefor as provided by law."
(R. S., Sec. 1058.)

"No account shall be allowed by the Board of County
Commissioners unless the same be made out in separate
items, properly dated, and the value of each item specifically
described, and when no specific fees are allowed by law, the
date that such services were rendered and the time actually
and necessarily devoted to the performance of any service
charged in such account shall be specified, which account so.
made out shall be verified by affidavit, setting forth that
said account is just and correct, and that the whole or no,
part of the same has been paid by the county or any indi-
vidual; *Provided,* nothing in this section shall be construed
to prevent the Board of County Commissioners from dis-
allowing any account, in whole or in part, when so rendered
and verified, nor from requiring any other or further evi-

dence of the truth and propriety thereof, as they may think
proper." (R. S., Sec. 1062.)

"For any violation of the preceding section, the Board of
County Commissioners shall be held responsible on their
official bonds to the full amount of any account so allowed,
to be recovered in an action of debt for the use of the proper
county, should the evidence show that the whole or any part
of any account has been allowed by any Board of County
Commissioners contrary to the provisions of the preceding
section." (R. S., Sec. 1063.)

"All claims and demands held by a person, or persons,
company or corporation, against a county, shall be presented
for audit and allowance to the Board of County Commis-
sioners of the proper county, as provided by law, *before any
action, in any court, shall be maintainable thereon.*" (R. S.,
Sec. 1216.)

Considering these various provisions together, which
should be done to arrive at an intelligent understanding of
the intention of the law-making power, it is plain that the
purpose of requiring a full itemized statement was to hedge
a County Board about with such restrictions in the allow-
ance of bills that the individual citizens and taxpayers might
have the means of knowing the cause and validity of county
expenditures, and that the requirement for verification has
for its object a showing of good faith and honesty in the
presentation of the bill, and some evidence of the truth,
justness and correctness of the claim. As was said in a
recent case, the provisions are "designed to protect the
board from importunities to pass upon claims before they
are presented in such a way as to be considered intelligently,
to enable it to easily eliminate improper charges from claims,
and to enable taxpayers to detect abuses in the allowance
of claims." (Northern Trust Co. v. Snyder (Wis.), 89 N.
W., 460.)

We do not perceive how it is possible to avoid the per-
emptory language of Section 1216, and to permit an action
to be maintained upon a claim coming within its purview

without positively disregarding the terms of the statute. Indeed, if we do not mistake the position of counsel, the argument is not that the statute is directory, but that the cause of action in the case at bar is not such a claim or demand as comes within its meaning or operation. The authorites cited in support of that contention are largely, so far as they relate to money demands, cases of tort or involving unliquidated damages; but we think they are not applicable to the issues and facts in the case before us. This case presents no tortious act for which the county would be liable, nor is the demand on which recovery is sought an unliquidated one. It is attempted to recover certain money alleged to have been paid to the defendant, involuntarily and under duress, and to prevent the party paying the same from being imprisoned, and his property from beng seized, under a wrongful and void arrest, conviction and judgment of a justice of the peace; the payment having been made in satisfaction of a fine assessed by a justice of the peace without jurisdiction. The fact is that the money demanded in this action was paid to the justice of the peace; and if it came into the possession of the county, it did so by having been turned into the County Treasury by said justice.

It appears that the assignors of plaintiff were each separately complained against before a justice of the peace, in a certain outlying precinct of the county, for unlawfully bringing sheep into the State without notifying the Board of of Sheep Commissioners, as required by law; and that the proceedings resulted in a judgment by the justice that each pay a fine of five hundred dollars and the costs. The amount of the fine and costs was paid to the justice; and it is claimed that the money so paid was sent to the County Treasurer by the justice, as required in the case of all fines, and was covered into the treasury of the county. It is contended that the justice was without jurisdiction in the premises, and that the money having been wrongfully received, the county should be required to refund the same.

It is certain that the justice was acting in excess of his

jurisdiction in pronouncing sentence upon the parties before him. His only authority in the premises was to sit as an examining magistrate, and upon ordering the accused to be held to answer in the District Court upon the charge preferred against him, to take a satisfactory recognizance for his appearance before such court, or in default thereof to commit him to the jail of the county until discharged by due course of law. The jurisdiction of justices of the peace to try and determine public offenses, and impose punishment, is limited by statute to cases in which the punishment prescribed by law does not exceed a fine of one hundred dollars and imprisonment for six months in the county jail. (R. S., Sec. 5204.) The offense charged in the cases before the justice, although declared to be a misdemeanor only, is made punishable by imprisonment in the county jail not more than sixty days, or by a fine of not less than five hundred dollars not more than one thousand dollars. (R. S., Sec. 2091.)

It is clear that the county would not be liable to respond in damages as for a tort for the unwarranted or illegal act of the justice. Assuming the money paid to the justice, in satisfaction of the fine, to have gone into the County Treasury, the liability of the county, in any event, can only be for a return of the money, recoverable, if at all, by the party or parties entitled thereto in an action as for money had and received. The amount is capable of definite ascertainment, and cannot be treated in any sense as unliquidated.

The statute particularly applicable to the question in hand requires that "all claims and demands" shall be presented for audit and allowance before any action in any court shall be maintained thereon. When taken in connection with the other portions of the statute, the words "claims and demands" ought probably to be understood as referring to and covering only claims and demands for money, or for the payment of money—a claim or demand that is to be satisfied according to its terms by the payment

of money, or, in the case of a county, its equivalent, a county·
warrant or order upon the treasurer for money.  But, out-
side of that limitation, the words seem to us to be suffi-
ciently broad and comprehensive to embrace all claims and
demands for money; and we think they were thus broadly
used in the statute under consideration.  That view is.
strengthened, if necessary, by a reference to the constitu--
tional provision above quoted.

In California it is held that the term *claim,* as used in·
connection with the estates of deceased persons, has refer-
ence to such debts or demands as might have been enforced.
against the decedent in his lifetime by personal actions.
for the recovery of money, and upon which a money judg-
ment could have been rendered.  (Fallon v. Butler, 21 Cal.,.
25; *In re* Swain's Estate, 67 Cal., 641.)  Although the·
earlier decisions in Wisconsin held that the provision for
presentation to a municipality of a claim before any action
should be maintained did not apply to actions for personal.
torts, it was conceded in one case, at least, that the term.
"claim" was broad enough to include an action for tort, but
it was deemed not to do so in the case before the court
upon consideration of the connection in which it was em-
ployed.  (Kelly v. Madison, 43 Wis., 638.)  But where
the provision was that any claim or demand, of whatsoever·
nature, shall be presented, it was held that claims arising·
out of torts were included.  (Van Frachen v. Fort Howard,.
88 Wis., 570; Hoch v. Ashland, 83 Wis., 361.)

It is perhaps unnecessary for us to go to the length of·
holding that a claim arising out of a tort is required to be·
presented to the County Board, to entitle a party to main-
tain an action thereon.  The cause of action in the case at
bar does not arise out of any tort for which the county·
would be in any way liable.  As already explained, its lia-
bility depends upon whether it has received money of the·
plaintiff which in equity and good conscience it ought not
to retain.  Nevertheless, we think it well to say that the·
purpose of the statute, the comprehensive language em-

ployed, and the fact that whatever the character of the claim, if one for money, in case it be legal and justly chargeable to the county, but one method of payment is provided for, we do not perceive any good reason for excluding from the provision of the statute any claim against the county based upon a money demand. (See Powder River Cattle Co. v. Custer Co. (Mont.), 22 Pac., 383.)

In the case at bar the claim was not presented as required by the statute, if indeed it can be considered to have been presented at all. The attorneys for plaintiff in error sent a written communication to the board demanding on his behalf the "recovery back" of a certain sum of money stated in the letter to have been paid into the County Treasury, and that the same had been paid involuntarily and under duress by three persons respectively therein named, and that the plaintiff was the assignee and legal holder of the claims, and that unless the same be paid legal proceedings would be instituted to collect the same. It was not verified; nor did the communication state to whom or what officer the money had been paid, or the circumstances thereof, except as above mentioned.

If there exists any reason for verification in any case, it would seem that one ought to be required, where a claimant makes demand as an assignee, without submitting any evidence of the assignment. It is quite clear that the claim was not presented in such a manner as to have authorized the board to consider it. The only action taken by the board in respect to the communication, as shown in the evidence, was to refer the matter to the County Attorney to investigate and report his findings thereon. It, however, appears that the County Attorney afterward wrote to the attorneys who had submitted the demand stating that the letter had been handed to him for reply, and that the matter therein mentioned had been decided by the board at the preceding November meeting in the presence of the plaintiff Houtz, and his attorney, Mr. Heywood, and that no further action was required.

The only other reference to the claim of the plaintiff appearing in the record of the proceedings of the board occurs in the minutes of a meeting held November 7, 1899, wherein it is stated that John S. Houtz, with his attorney, A. R. Heywood, appeared before the board in relation to the matter of the fine of five hundred dollars that had been imposed upon him by the justice of the peace of Thayne precinct, under the charge of having brought sheep into the State before giving the notice as provided by law, and asked that said fine be refunded to him; and at the same time Mr. Heywood appeared as attorney for J. N. Iredale, and Johnson, Duckworth & Company, who having been tried and convicted for said offense in said precinct and fined in the sum of five hundred dollars, each, the board, after having heard the complaints, and being fully advised in the premises, considers that if any redress can be had, it must be in the District Court.

The claim of the plaintiff embraced in the present suit is based upon the payment of fines imposed not upon himself, but upon Hyrum Severson, Andrew Hudson and E. P. Houtz, respectively, and the proof was confined to the fines assessed against those parties. It appears that no written claim was presented in November, 1899, nor at any other time, except by the letter of March, 1900, already mentioned. The plaintiff did not offer the record of the meeting of November. It was introduced by defendant, and admitted over objection of plaintiff's counsel. The record was objected to as immaterial, so far as it related to the appearance of Mr. Heywood for John S. Houtz, and as immaterial and incompetent in respect to his appearance for the other parties named in the record of such proceedings. It was no doubt immaterial as showing or tending to show in itself a presentment of the claim sued on, since it does not mention the claims now relied on. And, moreover, the claims were not assigned to plaintiff until March 1st, 21st and 28th, respectively. It seems to have been offered by defendant to show that the fines now complained

of were not in fact paid by the assignors of plaintiff, but by the plaintiff himself, and the other parties described in the record of the November meeting of the board.

We have thus adverted to the proceedings of the board for the purpose of disposing of the contention of counsel for plaintiff in error that the board waived a compliance with the statutory requrements by declining to allow the claim upon other grounds than that it had not been presented in form. Without deciding whether the provisions of the statute as to the presentment of claims may be waived by the board, so as to prevent it from insisting upon the absence of a presentment in bar of an action, or to what extent the board may waive strict compliance, we are of opinion that the proceedings cannot be held to amount to a waiver. No claim in writing of any character was filed at or before the November meeting; and the statement contained in the record of that meeting clearly fails to disclose that the claims sued on were the subject of the demand then verbally made upon the board; and we can perceive no warrant for holding that the board, at the November meeting, disallowed, or even acted upon, the claims here in controversy. The only consideration given by the board to the letter of counsel written in March following was to refer the matter to the County Attorney for investigation and report. Notwithstanding that the then County Attorney replied to the letter, as above stated, the record of the board's proceedings were open to the parties for inspection, from which it could have been readily ascertained that upon these claims the board had not taken final action. Under the circumstances, it would be stretching the principle contended for by counsel to hold that the board had waived a strict compliance with the statute in relation to the claims sued on. The letter aforesaid was not filed as a claim against the county; and it seems, therefore, that it was not regarded as an attempted compliance with the statute relating to the presentation of claims. It appears to have been looked upon more as an ordinary de-

mand, such as might be made upon an individual. Indeed, we think it not an altogether unwarranted assumption that counsel, at the time, so conceived the object and effect of the letter, since the petition herein, as originally filed, alleged in this respect merely a demand upon the defendant that it repay the sum claimed to have been unlawfully exacted from plaintiff's assignors, and not until the case had gone to trial was the petition amended to show a presentation of the claims. The facts strongly incline our minds to the inference that there was no attempt to comply with the statutory requirements; and, therefore, that the parties were not misled by any of the proceedings of the board.

Plaintiff was not taken by surprise in this matter. Before the introduction of any evidence the defense moved for judgment on the pleadings, giving as one ground the failure of the petition to allege presentment. Thereupon the petition was amended by interlineation. The motion was immediately renewed and overruled. The admission of the letter was objected to as not showing a compliance with the statute. At the conclusion of plaintiff's testimony a motion for judgment was made by defendant, one of the reasons assigned being that the evidence failed to show a legal presentment of the claim. At any time prior to the final submission of the cause, the plaintiff could have had a dismissal without prejudice, but advantage was not taken of that privilege. The cause having been submitted, the court had no alternative but to decide the cause upon the merits. (R. S., Sec. 3755.) There was not even a request for special findings. There seems to exist no just reason, therefore, for this court, if it had any right to do so, to disregard the positive commands of the statute, in order to avoid the possible consequences of an affirmance of the judgment on this ground.

The court found generally for the defendant and awarded judgment in its favor; and, although we would be required to affirm the judgment on the ground already discussed, there are other reasons which we think lead to the same result.

We are inclined to regard the petition as sufficient to show a cause of action for money had and received, but the case seems to have been instituted upon the theory that the county had committed a tort by unlawfully causing the arrest and conviction of the assignors of plaintiff, and exacting the involuntary payment of a fine from them, while they were under duress, and to prevent their imprisonment and their property from being seized. It is alleged that the defendant wrongfully and unlawfully arrested the parties in question, and caused them to be taken before a certain justice of the peace to answer the charge hereinbefore mentioned; and that the fine was paid to the defendant to prevent the consequences aforesaid. The arrest, trial, conviction and judgment are alleged to have been void, for the reason that the justice was without jurisdiction over the subject matter of the offense.

It is evident that the county did not cause the arrest, and was in no sense responsible for the proceedings. The complaints were signed and sworn to by the prosecuting attorney, but his act in that respect was not the act of the county as a body corporate and politic. In criminal cases the prosecuting attorney represents the State. All prosecutions are conducted in the name and by the authority of the State. (Const., Art. 5, Sec. 15; R. S., Secs. 1104, 5188.) The complaints in question were in the ordinary form of criminal complaints, the State of Wyoming being named as plaintiff. There is not the slightest evidence that the county, through its Board of Commissioners, directed or authorized or had any sort of connection with the making of the complaints, or the prosecution of the persons accused. As a political sub-division and agency of the State, a county sustains very important relations to the State in various matters. The expense of criminal prosecutions occurring in the county are defrayed out of its treasury; but that fact does not constitute the county the accuser whenever the prosecuting attorney prefers a criminal charge, and secures the conviction of a party for an offense against the penal laws of the State.

With reference to the payment of the fines complained of in this case, the proof is that they were collected by and paid to the justice of the peace. The money so paid may have eventually found its way into the County Treasury, but, if so, it is because, in the performance of his duty in the matter of fines the justice caused the same to be paid to the County Treasurer for the use of the schools of the county.

Whatever, therefore, may have been the defects in the proceedings wherein the fines were collected, the county is not answerable to the plaintiff for the money so collected unless it is shown to have been paid into the County Treasury. This is an action for the recovery of the money, in the nature of an action for money had and received. In Carton v. Board of Commissioners, 10 Wyo., 416; 69 Pac., 1013, this court said as to such an action: "It is an equitable action, and no recovery can be had except upon proof that the defendant has received money of the plaintiff which, in equity and good conscience, it ought not to retain."

The evidence upon the question of the receipt of the money sought to be recovered appears to be quite unsatisfactory. On behalf of the plaintiff, the County Treasurer was sworn as a witness, and after stating that he had with him the book showing the receipts of the County Treasurer for the year 1899 for moneys collected for fines, was asked the following question: "Does that book show the receipt during the year 1899, by this county and by the Board of County Commissioners of this county, of moneys received upon fines paid to one N. B. Anderson, justice of the peace, in this county, by Hyrum Severson, E. P. Houtz and Andrew Hudson?" The witness answered: "I find moneys received from E. P. Houtz, I think, or Eugene." That is the extent of the information derived from that witness. He was asked to turn to the page where the entry mentioned by him was to be found, and to read from the stub upon which the memorandum appeared. He did read it, showing that it purported to show the receipt of

five hundred dollars from Eugene Houtz, and John Duckworth & Company for trespassing; and, upon motion being made to strike out the answer of the witness, as not identifying the money mentioned as the money sued for, counsel for plaintiff consented that it should go out "for the present;" and it was not again called for. The only material answer of the witness remaining in the case, above quoted, stated no amount, and no fact by which it is possible to ascertain that what he said he had found in the book, had any relation to the fines which this action was brought to recover.

In addition to that testimony, the only other evidence upon the subject is to be found in the testimony of Mr. Sammon, who was the prosecuting attorney when the fines are alleged to have been paid. Before referring to his testimony it should be stated that the docket entries of the justice introduced in evidence to show the proceedings had before him, the judgment and payment of the fines, decalred expressly in two of the cases, those against Severson and E. P. Houtz, that the parties pleaded guilty and paid the fine and costs in checks; and that the other party, Andrew Hudson, having entered a plea of not guilty, was convicted and sentenced to pay fine, and gave notice of appeal, and furnished a bond, but several days later came in and paid the fine and costs, the docket not stating the manner of payment.

Mr. Sammon was asked if he had paid in to the County Treasurer any of the moneys mentioned in the docket entries of Justice of the Peace Anderson which had been introduced in evidence. He replied that he delivered some checks given him by Mr. Anderson to the County Treasurer, and that he understood them to be in satisfaction of the fines. In answer to other questions, he stated that he acted merely as custodian for the justice in the transmission of the money. At first he stated that what he had brought in he understood to cover the amount of the fines in the three cases, outside, possibly, of some of the costs; but after-

wards corrected himself by stating that the fine in one case had not been paid until after the trial, and as he was not there when payment was made, he knew nothing about it, and did not bring it in.

On cross-examination, he testified that the fines paid, so far as he knew, were paid in checks, but he acknowledged himself unable to say whose checks they were. He was examined further upon the subject, with the result that, according to his recollection, the fines were paid by parties other than those summoned before the justice, but his testimony did not further enlighten the case as to whose checks were given in payment of the fines. Being again questioned by counsel for plaintiff, he testified as follows: Question: "You say this money which you personally brought into the County Treasurer's office was in the form of checks?" Answer: "That was my understanding; sealed up in an envelope, and I never got to see it, but my impression is they were checks." Question: "Did you ever see one of these checks?" Answer: "I don't think I have. No, Mr. Rogers, I don't think I have."

Now, without any disposition to be technical, it seems to us that the proof of the receipt of the money by the county is insufficient to authorize a reversal of the judgment. Not having seen the checks, and they being sealed up in an envelope, Mr. Sammon was clearly incapable of testifying to the fact that the fines were actually paid to the treasurer. Indeed, his statements were guarded in that respect, and he stated merely his understanding that the envelope he brought with him to the treasurer's office was supposed to contain the fines in two of the cases. Whether the checks if, in fact, delivered were ever collected is not disclosed. It may be said that, had they not been colletced, suit would not have been brought; but it was incumbent upon the plaintiff to establish his case, and certainly it was his duty to show the very material fact in his case that the money claimed had been paid into the County Treasury, the allegation upon that subject having been denied by the answer.

In case of the fine paid some time after the hearing, there is no proof whatever to show its receipt by the county.

We might rest here, without discussing any other question in the case, but we find the evidence to be not altogether convincing that the money was paid involuntarily, or while under duress and to avoid imprisonment.

It may be conceded that when there is an arrest for improper purposes, without a just cause; or an arrest for a just cause, but without lawful authority; or where there is an arrest for a just cause, and under lawful authority, for unlawful purposes, it may be contsrued to constitute duress. (Richardson v. Duncan, 3 N. H., 508; Severance v. Kimball, 8 N. H., 386.) In Durr v. Howard, 6 Ark., 461, recovery was permitted of a fine imposed for a criminal offense by the mayor of a town without jurisdiction of the offense, where it appeared that the party had been ordered into custody of an officer until the fine was paid, and while in such custody the fine was paid to the officer, and the party then released. In Harvey et al. v. The Town of Olney, 42 Ill., 336, where the plaintiffs had paid a license fee to carry on a certain business, under a void ordinance that provided for the imposition of a fine and a sentence of imprisonment upon a party conducting the business without a license, the court said that the mere invalidity of the ordinance would probably form no ground for recovery of the money, if the payment was really voluntary, and that the question should have been left to the jury, and that if the money was paid under threats of prosecution, or under a belief, induced by the officers of the town, that only by payment could they escape prosecution, and was paid by them under protest, then the payment would not have been voluntary.

In Bailey v. Town of Paullina, 69 Ia., 463, the action was for the recovery of a fine and costs imposed by the mayor, under an invalid ordinance. It appeared that on the trial for the offense the accused raised no objection to the validity of the ordinance, and paid the money while under ar-

rest, but without protest. The court held that, under such circumstances, the payment would be voluntary, and it was said: "It is not claimed that the defendant in the judgment was induced to make the payment through fraud, deceit or mistake of fact. It is, however, insisted that he was under duress when he made the payment, by reason of the fact that he was then under arrest. But it is not shown that the arrest had anything to do with the payment, or that the defendant was constrained or influenced thereby to make it. It is not shown that, because of the duress by the arrest, the defendant made the payment, nor can such a thing be inferred. We may readily presume that the defendant paid the fine and costs because he believed the judgment against him valid, and this we are required to presume, in the absence of any showing of objection, or that the payment was made under protest. In our opinion, the Circuit Court rightly held, upon the facts presented to us, that plaintiff cannot recover."

In Comstock v. Tupper, 50 Vt., 596, money was paid to an attorney employed to prosecute the one paying the money for unlawfully selling liquor, and was afterwards paid to the County Clerk. No warrant had been served, and, of course, there was no record of a fine having been imposed. A complaint, however, had been drawn, and a warrant issued. The trial court found in a suit brought to recover the money, that it was paid to save plaintiff from prosecution; that the proceedings in the settlement were illegal, but that the money having been paid to purchase the peace of the plaintiff, he was not entitled to recover it. The Supreme Court said: "This must be regarded either as a voluntary payment in satisfaction and discharge of a claim made upon the plaintiff, or to buy off from and quiet a criminal prosecution to which he was exposed. Nothing in the character of extortion or duress is shown that relieves the transaction from the character, or the plaintiff, from the position, which we assign to them, as above. This being so, plaintiff cannot have the money back by action. See books and cases *passim*."

It was held in a case in Pennsylvania that to constitute
duress by imprisonment the latter must be unlawful, or
there must be an abuse of, or an oppression under lawful
process or legal detention; and that if there is an arrest
for a just cause, but for an unlawful purpose, the party
arrested, if he is induced thereby to enter into a contract,
may avoid it as one procured by duress. And where it was
found that the property had been parted with under duress
by imprisonment, although under legal warrant, the prose-
cution having been conducted for the purpose of extorting
money from the accused, the property could be recovered.
(Fillman v. Ryan, 168 Pa. St., 484.)

In the case of Carver v. United States, 111 U. S., 609,
the plaintiff had been convicted by a military commission
of defrauding the government, and was sentenced to pay a
fine, and paid the fine, and was then released. Afterward
he consented that the money so paid might pass into the
treasury as a credit upon his accounts. It was held that he
could not recover the money either on the ground that the
fine was illegally imposed or that it was paid under duress.

In McKee v. Town Council of Anderson, 1 Rice (S. C.),
24, plaintiff was fined for exhibiting certain shows in viola-
tion of a town ordinance. It was held that the money could
not be recovered back; and the court said that the case did
not come within the cases on the subject of money paid
under color of legal proceedings, or void process, or extor-
tion, or obtained by oppression. It does not appear that the
plaintiff was under arrest when the money was paid.

An early case in Kentucky is apparently somewhat at
variance with some of the cases above cited in that no con-
sideration seems to have been given to the point whether
the payment was made voluntarily or when under duress.
(Stromburg v. Earick, 6 B. Mon., 578.) An action was
brought against a justice of the peace to recover a fine paid
to that officer in satisfaction of a sentence rendered with-
out jurisdiction. On the ground that the plaintiff was con-
victed of an offense not punishable by the justice, it was

held that the money could be recovered.  It does not appear from the report of the case whether the fine was paid while the party was under arrest or not; but the decision apparently supports the proposition that the fine could be recovered back, upon a mere showing that the judgment was void.  But in a more recent case it was held by the Court of Appeals of Kentucky that, where one who was arrested for violating a city ordinance requiring every huckster to take out a license, procured a dismissal of the warrant by taking out a license, instead of standing trial and proving his innocence, as he might have done, by showing that he came within an exception mentioned in the ordinance, the license was voluntarily paid, and could not be recovered back from the city.  (Bean v. City of Middlesboro, 57 S. W., 478.)

In Maine it was held that the payment of a tax which may conscientiously be retained, with the full knowledge of all the facts, after one has been arrested for its non-payment, and discharged on his promise to pay it, is voluntary, and cannot be recovered back, notwithstanding informalities in its assessment.  (Fellows v. School District, &c, 39 Me., 559.)

We have not been able to examine a case said to be reported in 12 Court of Claims Reports, wherein it is said to have been decided that the payment of a fine to obtain release from imprisonment cannot be deemed voluntary.  (Devlin v. U. S., 12 Ct. of Cl., 266.)  And this we think is a correct statement of the law.  The question in the case at bar is whether the payments were made to obtain release from imprisonment, and involuntarily made.

In Elston v. City of Chicago, 40 Ill., 514, the court said: "No case can be found where money has been voluntarily paid, with a full knowledge of the facts and circumstances under which it was demanded, which holds that it can be recovered back, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party paying.  And it is invariably held that a payment is not to be regarded as compulsory, unless made to relieve

the person or property from an actual or existing duress imposed upon him by the party to whom the money is paid." (See also Benson v. Monroe, 7 Cush., 125; The Town of Ligonier v. Ackerman, 46 Ind., 552.)

Now, in the case at bar, it appears that the parties accused before the justice were not arrested, nor were warrants issued for their arrest. A summons, as in civil cases, was issued and served requiring the parties to appear in three days. They appeared, and the docket of the justice as to two of the parties recites that they each pleaded not guilty, and afterward changed their pleas to guilty after having been duly informed of their right to waive examination to the District Court, and also their right of appeal. Thereupon the sentence of the court was as to each that he pay a fine of five hundred dollars and all costs of prosecution, and to stand committed until such fine and costs be paid; that defendant paid fine and costs in checks and was discharged from custody. In the third case the recitals are in substance that a plea of not guilty was entered and a hearing had, and witnesses examined. Whereupon it is stated that in the opinion of the court defendant is guilty, and he was sentenced to pay a fine, and that he be held in custody by the constable until such fine be paid or he be otherwise legally discharged. Defendant gave notice of appeal, and gave a bond of $575 to secure the fine and costs, until he could get a bond of twelve hundred dollars to appear in the District Court. Said bond was furnished August 12, 1899. Later defendant paid fine and costs and the case was closed.

The prosecuting attorney who was present at the hearings had before the justice was examined as to the circumstances of the payments in the two cases first above mentioned. He stated that one of the parties asked what the procedure would be after appealing and furnishing bond, and that either the court or himself informed him the fine would be at least five hundred dollars; that he then asked permission to plead guilty, and save the trouble of putting up a bond or perfecting his appeal, and be permitted to pay

the five hundred dollars; that one other of the parties asked permission to do likewise, and waive any hearing, which was granted. "They furnished the checks under this statement." This was brought out from the witness, who had been called by the plaintiff, on cross-examination. He was then asked the following question: "Well, you say that these parties asked permission to plead guilty and asked what the lowest fine that they could be fined in the District Court, and that they wanted to pay that and avoid any further trouble?" The witness answered: "Yes, sir." Question: "That is, they wanted to adjust this matter of the informations that had been filed against them for bringing sheep into the county or the State in violation of law, and stated their willingness to pay the lowest fine that could be administered in the District court and costs up to that time, and end the matter that way?" Answer: "Yes, sir." Question: "And it was under those circumstances that the payments were made?" Answer: "Yes, sir."

We probably know judicially that Thayne precinct is situated in what is known as Star Valley, a section quite remote from the county seat, where the sessions of the District Court are held; and there appears a reasonable ground for conceiving that the parties might have been desirous of avoiding the necessity of putting up bonds and attending at the next term of the District Court. Of course, on the matter of appeal there was a misconception of the legal status of the case. The jurisdiction of the justice seems to have been complete for the purpose of examining into the complaints, and if proper cause was found, to recognize the parties to appear before the District Court; or, in default of a recognizance, to commit them until discharged by due course of law. He was not authorized to adjudge guilt so as to pronounce sentence, and the judgment rendered was in excess of his jurisdiction, and, therefore, void.

It seems that the parties were represented by or had the assistance of one who acted for them in the capacity of

attorney, or at least as an advisor; but it was attempted to be shown that he was not a regularly admitted attorney. A reference to the recitals of the justice's docket would seem to indicate that the magistrate was not entirely clear regarding the procedure, since there was a strange mixture in the information given to the parties that they might waive examination or appeal. They might have indeed waived examination, and given bonds to appear before the District Court to answer for the offense charged. And, indeed, in ordinary cases an appeal lies from a judgment of the justice of the peace. But in the case of a preliminary examination it is a misnomer at least to speak of an appeal to the higher court.

Nevertheless, the effect upon these parties would have been much the same, in their situation. Their recognizance would have been required, and, failing to furnish it, their commitment would follow.

It should be remembered that the justice had authority to hold the accused parties for trial in the District Court, and to commit them in default of bail. Had he done so, the custody by an officer would not have amounted to an unlawful restraint. The error of the magistrate was in assuming to pass sentence.

If it be true, and no contradiction of the testimony of the prosecuting attorney was attempted, that, understanding the lowest fine that could be imposed for the offense was five hundred dollars, and realizing their guilt, or not caring to contest the complaint, they expressed a willingness to pay the lowest fine provided by statute, and avoid further trouble; and, agreeable to such a desire, the justice entered up the fine, and received it; and they offered no objection or protest; there must appear to be some foundation for the District Court to have found that the payments were made voluntarily, and not under compulsion or duress, especially when it is considered that the record nowhere discloses that, in obedience to the order of the court, either of the parties were taken into custody

by any officer, or that any commitment for that purpose was issued. They were before the justice in response merely to a summons, and had not been under arrest at any time. That is the effect of the disclosures of the justice's docket entries; and Mr. Sammon, the prosecuting attorney, testified that no arrest was made. Indeed, it does not appear by the docket entries, nor was it otherwise shown, that a sheriff or constable was present at the hearings.

In the third case, it is evident that the party was not in custody when the fine was paid. He had given, first, a bond to secure the fine and costs, and afterward furnished a bond for his appearance at the District Court. He need not have paid the fine. But he subsequently appeared and paid the same. It can hardly be contended that his payment was made under duress.

Unless, therefore, the solitary fact that the judgment was void, as in excess of the jurisdiction of the justice, constitutes a sufficient ground for recovering back the money paid in these cases, without objection or protest, it is doubtful, to say the least, whether the plaintiff established any right upon the merits of the action. In the two cases where pleas of guilty were entered, it may be that the proceedings ought to be construed as amounting to duress, and rendering payment of the fines necessary, in the absence of bond, to procure release from custody without any other or contrary showing; but if the payments were induced, not because of the threatened imprisonment or actual constraint occasioned by the order of the justice, but preferably to close the matter and avoid further inconvenience and trouble, without waiting on the District Court, and the justice and prosecuting attorney agreed to their expressed desires, and the record was made up accordingly, and the parties allowed to depart upon payment of the smallest penalty that could be inflicted in the proper forum, the District Court would have been warranted in finding the payments to have been voluntarily made. We

think the evidence presented a question of fact for the court's determination in that respect. And it seems to us immaterial that the parties may have misconceived the authority of the magistrate, and believed that an appeal was the method to be pursued in reaching the District Court. There was no misunderstanding of the facts upon which the complaints were based, nor of the charge preferred against them; and, while the proceedings taken to settle the matter were irregular, and unauthorized by law, assuming the payment of the fines to have been the result of agreement, we are inclined to the opinion that the situation would not afford ground for the recovery back of the money.

In view of our decision upon the other questions involved, it is unnecessary that we express any definite conclusion upon the effect of the evidence on this branch of the case. We have referred to some of the authorities bearing upon the subject, and discussed it at some length, for the reason that the question may have entered into the consideration of the trial court. We will say, however, that we regard the right to recover back the fines in controversy as at least doubtful, in view of all the evidence touching the circumstances attending the payment, and the situation of the parties at the time. The record does not disclose error in the judgment, and it will be affirmed.

*Affirmed.*

CORN, J., and KNIGHT, J., concur.