Harold HOFELDT, Petitioner,
(Plaintiff),

v.

John EYRE, Thomas Redmon, and the
Wyoming State Board of Control,
Respondents, (Defendants).

No. 91–179.

Supreme Court of Wyoming.

April 1, 1993.

Jack Gage of Gage & Moxley, Cheyenne, for petitioner.

John Eyre and Thomas Redmon, pro se.

Joseph B. Meyer, Atty. Gen., Mary Guthrie, Sr. Asst. Atty. Gen., Dennis C. Cook, Sr. Asst. Atty. Gen., and Frederick E. Chemay, Asst. Atty. Gen., for respondent Wyoming State Bd. of Control.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and BROWN, Ret. J.

BROWN, Justice, Retired.

The Wyoming State Board of Control denied Harold Hofeldt's petition for a declaration of abandonment of certain supplemental supply water rights attached to lands owned or leased by respondents Thomas Redmon and John Eyre.

Respondents state that the issues are:

Does the abandonment statute, § 41–3–401, W.S.1977 (Cum.Supp.1991), apply to a supplemental supply water right in the same manner as it does to an original supply water right; and

If not, is a supplemental supply right subject to a declaration of abandonment for non-use when the irrigation requirements of the appurtenant lands are fully satisfied without having to use the supplemental supply right.

We reverse and remand to the State Board of Control.

Respondent Redmon holds several water rights appurtenant to land located in Township 16 North, Range 114 West, Uinta County. These rights include original direct-flow rights, secondary supply, and supplemental supply rights.

Redmon's original supply rights under Permits 2360 Enl. and 2361 Enl. (the Leonard Wall appropriations) are appurtenant to 160 acres in Sections 8 and 17 and to 120 acres in Section 17, respectively. Water under these rights is diverted and conveyed to the appurtenant land by means of the enlarged Deeben–Heinze Ditch. These water rights have priorities of May 14, 1909, and June 20, 1910, respectively.

Redmon was also entitled to apply water to some of these same lands under the Leonard Wall appropriation, Permit No. 5440 Enl., and Permit No. 5612 Res. This secondary supply right has a priority of April 2, 1947, is appurtenant to the acreage to which the original supply rights apply under Permits 2360 Enl. and 2361 Enl., and is conveyed from the reservoir to the lands by means of the enlarged Deeben–Heinze Ditch.

Redmon also holds a supplemental water right under permit No. 27022 for 249.5 acres, with a priority of October 10, 1978.[1] Redmon's supplemental water right, with an October 10, 1978 priority, encompasses a diversion from the Black's Fork River through the Redmon Portable Pipeline to supplement the original supply water rights under Permit No. 2360 Enl. and Permit No. 2361 Enl., the Enlarged Deeben–Heinze Ditch and the Leonard Wall appropriation, which divert from the Black's Fork River. It is appurtenant to 80 of the acres in Section 8 and 62.7 of the acres in Section 17 to which Permit 2360 Enl. applies, and to 106.8 of the acres in Section 17 to which Permit 2361 Enl. applies. Water supplied under this supplemental supply right is conveyed to the lands in question by pumping it through the Redmon Portable Pipeline.[2]

Petitioner Harold Hofeldt holds a water right under Permit No. 6920 Enl., with a priority of November 14, 1986. Petitioner's water right encompasses a diversion from the Black's Fork River, a tributary of the Green River. On April 16, 1990, Hofeldt filed a Petition for Declaration of Abandonment pursuant to Wyo.Stat. § 41–3–401 (Supp.1991), seeking a declaration by the Board that certain supplemental supply water rights, owned and used by respondents Redmon and Eyre, respectively, under Permit No. 27022, had been abandoned.

Petitioner asserted that water under Permit No. 27022 had not been applied to beneficial use through the Redmon Portable Pipeline on the lands of record for at least five consecutive years immediately preceding the filing of the petition for declaration of abandonment when water was available to satisfy the right. In the five years immediately preceding the filing of

the petition for declaration of abandonment (April 16, 1990), Redmon/Eyre purchased water from the Meeks Cabin Reservoir rather than use their supplemental supply through the Redmon pipeline.[3]

The State Board of Control denied Hofeldt's petition and Hofeldt filed a petition for review in the district court dated February 13, 1991. In Finding of Fact Number 16 (which also contains a conclusion of law), the State Board of Control determined:

> THAT Contestees' [Redmon/Eyre] legal entitlement to use of supplemental water under Permit No. 27022 did not constitute a requirement that water be diverted at such times. Contestees['] evidence was uncontroverted that the lands in contest were sufficiently irrigated for their purposes by water from other sources during the time period at issue, thereby eliminating the need for the supplemental supply during that period.

The district court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09.

The single issue in this appeal is whether the abandonment of water rights statute applies to a supplemental supply water right. Wyo.Stat. § 41–3–401(a) (Supp.1991) provides, in pertinent part:

> Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto.[4]

---

1. A supplemental supply right is "a permit or certificate of appropriation for the diversion, from a stream, of water from a new source of supply for application to lands for which an appropriation of water from a primary source already exists." Wyo.Stat. § 41–3–113 (1977).

2. The Redmon lands were owned by Clifton T. Redmon, Donna Rae Redmon, Clifton R. Redmon, Jr., and Tamara Joan Redmon. John Eyre is a lessee and operator of some of the

lands appurtenant to the supplemental water rights.

3. Wall Development Company water is mentioned in the transcript and briefs. Whether such water was applied to Redmon lands is immaterial for our purposes.

4. Wyo.Stat. § 41–3–401(a) makes no distinction between original direct flow rights and supplemental supply rights.

There is no dispute with respect to the facts necessary for our determination:

(1) In each of the five years before Hofeldt filed his abandonment petition, there was insufficient water from Redmon's original supply right to irrigate appurtenant lands.

(2) That during each of the five years immediately preceding the filing of the petition for declaration of abandonment, water was generally available under Redmon's supplementary supply permit.

(3) In each of the five years referred to above and pertinent to this case, Redmon/Eyre used reservoir water to supplement the original supply permit rather than water under the supplementary supply permit.

Hofeldt's standing to petition for a declaration of abandonment under Wyo.Stat. § 41-3-401(b)(i) (Supp.1991) [5] is not contested. The parties agree that this is a case of first impression in Wyoming and that cases cited in the briefs are not much help to this court in making its determination. In *Cremer v. State Board of Control*, 675 P.2d 250 (Wyo.1984), we held that surplus water rights were not subjected to abandonment without also abandoning their base rights (original rights). The State Board of Control contends that the rationale of *Cremer* with respect to surplus water rights should also apply to supplementary water rights; that is, the supplementary water right cannot be subject to abandonment unless the original water rights are also abandoned. The Board makes an additional argument and cites one of its own rules in support:

5. Wyo.Stat. § 41-3-401(b)(i) reads:
  (b) When any water user who might be benefitted by a declaration of abandonment of existing water rights or who might be injured by the reactivation of the water right, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. The board has exclusive original jurisdiction in water right abandonment proceedings. The board shall, if the facts so justify, refer the matter to the superintendent of the water division where the abandonment is claimed to have occurred for public hearing. The total

The appropriation of water as supplemental supply is defined in detail by W.S. 41-3-113. In general, it involves the appropriation of direct flow water from another source to augment or supplement the available water for an existing appropriation for which the original source of supply does not provide a full supply. The amount of supplemental water which may be diverted is the amount available, in priority, to bring the total water diverted from all sources [to] the appropriated amount. *When the original source will furnish the entire amount of the appropriation, then no water may be diverted from the supplemental source. The water available from the original source must first be diverted in priority before any water from the supplemental source may be diverted.*

*Regulations and Instructions,* Part IV, Chapter 1, Section 10 (1986) (emphasis added). This rule is cited in support of the contention that, as stated in respondents' brief, "[T]he Board's rule authorizes, but *does not require* the use of a supplemental supply right when the original supply right does not furnish enough water to fulfill the entire appropriation." (Emphasis in original.) From an interpretation of the Board's rule that an owner of a supplementary right may use the right, the Board then reasons that if he is not required to use it, the right is not subject to abandonment. We are not persuaded by this reasoning. According to the Board's position, an appropriation could, under the circumstances of this case, hold supplementary water rights for 100 years or more and never use them.

absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period under this section. The following persons have standing to petition the state board of control to declare the abandonment of existing water rights under this section:
  (i) Any person who has a valid adjudicated water right or is the holder of a valid permit from the same source of supply which is equal to or junior in date of priority to the right for which abandonment is sought[.]

This case is one to be decided on the basis of policy rather than statutory law or precedent. It would not be illogical to adapt the rationale of the *Cremer* case to the facts of the case here and conclude that supplemental water rights are not subject to abandonment unless original rights are also abandoned. We believe, however, that there are more compelling reasons to decide otherwise.

■ There are certain basic principles with respect to water law that are reflected in our statutes and case law. Water is the lifeblood of Wyoming's economy. It is a scarce resource which must be effectively managed and efficiently used.[6] Because water is a precious and scarce resource, it must not be wasted. Wyo.Stat. § 41-3-101 (Supp.1991) provides in relevant part that "[b]eneficial use shall be the basis, the measure and limit of the right to use water." Furthermore, beneficial use is a continuing requirement which must be satisfied in order for the appropriation to remain viable. *Basin Electric Power Cooperative v. State Board of Control*, 578 P.2d 557 (Wyo.1978). Because of the great value of water, an appropriator, according to the basic statute on abandonment, cannot hold his water rights indefinitely without using them. Wyo.Stat. § 41-3-401.

■ We hold that supplemental water rights are subject to abandonment under Wyo.Stat. § 41-3-401, et seq. We believe that this determination best reflects the spirit of the water policy of the state.

Reversed and remanded to the State Board of Control for the entry of an order consistent with this opinion.

CARDINE, J., filed a specially concurring opinion.

THOMAS, J., dissenting (dissent to be filed at a later date).

CARDINE, Justice, specially concurring.

Statutes presently existing do not answer the question to be resolved in this case, which is whether a supplemental water right may be abandoned through non-use. I can agree with a rule that would provide that a failure to use the supplemental right when it is needed any time during a five-year period can result in abandonment. My problem with application of the rule to this case of first impression is that appellee suffers the loss of his supplemental water right without knowing beforehand what use was required to retain the supplemental water right. And now it is too late to make such use of the right.

"The general rule from time immemorial is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively. In civil cases, at least, constitutional law neither requires nor prohibits retroactive operation of an overruling decision, but in the vast majority of cases a decision is effective both prospectively and retrospectively, even an overruling decision. Whether the general rule should be departed from *depends on whether a substantial injustice would otherwise occur.*"

*Harvey By and Through Harvey v. General Motors Corp.*, 739 P.2d 763, 765 (Wyo. 1987) (quoting *Malan v. Lewis*, 693 P.2d 661, 676 (Utah 1984)).

The equities of this particular case are closely balanced. But, because appellees obtained their needed supplemental water from a different source, the balance seems to weigh more heavily on the side of appellant. Were it otherwise, I would favor prospective application only of the rule enunciated in this case.

---

6. *In re General Adjudication of All Rights to use Water in Big Horn River System*, 835 P.2d 273, 279 (Wyo.1992).