2005 WY 47

**Albert WOOSTER, Appellant (Plaintiff),**

v.

**CARBON COUNTY SCHOOL DISTRICT NO. 1, a local government entity; and Darlene Johanson, individually, Appellees (Defendants).**

No. 04–146.

Supreme Court of Wyoming.

April 14, 2005.

Rehearing Denied May 10, 2005.

Representing Appellant: Robert W. Horn of Robert W. Horn, P.C., Jackson Hole, Wyoming; and Heather Noble, Jackson, Wyoming.

Representing Appellee Carbon County School District No. 1: Catherine MacPherson of MacPherson, Kelly & Thompson, LLC, Rawlins, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The district court granted summary judgment to the appellee in this negligence action because the appellant's notice of governmental claim did not meet constitutional and statutory requirements. We agree and dismiss this appeal for lack of subject matter jurisdiction.

## ISSUES

[¶ 2]  The dispositive issues in this appeal may be stated as follows:

1.  Does the district court have subject matter jurisdiction in a Wyoming Governmental Claims Act case where the claim does not meet the requirements of Article 16, § 7 of the Wyoming Constitution? [1]

2.  Can a defective notice of claim presented within the two-year period of limitation of Wyo. Stat. Ann. 1–39–113(a) (Lexis-Nexis 2003) be cured by presentment of a non-defective notice of claim after that period has passed? [2]

3.  Is the holding of *Beaulieu v. Florquist*, 2004 WY 31, ¶ 8, 86 P.3d 863, 866 (Wyo.2004) (*Beaulieu II*) that governmental claims, when presented, must meet the requirements of Article 16, § 7 of the Wyoming Constitution, to be applied prospectively only?

## STANDARD OF REVIEW

[¶ 3]  Our standard of review of summary judgments is well known and will not be repeated here.  *See Beaulieu v. Florquist*, 2001 WY 33, ¶¶ 8–10, 20 P.3d 521, 525–26 (Wyo.2001) (*Beaulieu I*).

## DISCUSSION

[¶ 4]  The material facts are undisputed. On September 18, 2001, the appellant was driving a tractor-trailer that collided with a school bus driven by the appellee's employee. On July 16, 2002, the appellant presented to the appellee a notice of claim alleging injuries and damage resulting from the collision.

The notice of claim was signed only by the appellant's counsel.  On November 4, 2002, the appellant filed a complaint in district court alleging, *inter alia,* presentment of the notice of claim.

[¶ 5]  On March 25, 2004, this Court issued its decision in *Beaulieu II*.[3]  On the following day, the appellee filed a motion for summary judgment alleging that the appellant had not signed his notice of claim and it was not signed under penalty of perjury. The appellant responded on March 31, 2004, by presenting to the appellee an amended notice of claim, duly signed by the appellant and certified under penalty of perjury. Clearly, the amended notice of claim was presented more than two years after the date of the collision.

[¶ 6]  Further detailed analysis of this case is unnecessary.  The ruling of the district court is correct.  The law is as follows:  (1) when presented to the governmental entity, a notice of claim must be signed by the claimant and certified under penalty of perjury, as required by the Wyoming Constitution;  (2) such presentment, and the allegation thereof, is a condition precedent to suit and is, therefore, jurisdictional;  (3) the limitation period of Wyo. Stat. Ann. § 1–39–113(a) is not a mere procedural statute of limitations, but is a jurisdictional non-claim statute, meaning that a defective notice of claim cannot be cured via the relation-back doctrine by presentment of a non-defective notice of claim after the period has passed; (4) the holding in *Beaulieu II* that a notice of claim must meet the requirements of Article 16, § 7 of the Wyoming Constitution is not

1.

No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or political subdivision, shall be audited, allowed or paid until a full itemized statement in writing, certified under penalty of perjury, shall be filed with the officer or officers whose duty it may be to audit the same.
Wyo. Const. art. 16, § 7.

2.  "No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act,

error or omission...." Wyo. Stat. Ann. § 1–39–113(a).

3.

*Beaulieu I* made it clear that governmental claims must meet the requirements of Wyo. Const. art. 16, § 7, including the requirement that such claims must be *signed and certified* under penalty of perjury.... Furthermore, *Beaulieu I* made it just as clear that the claim "must be signed *by the claimant* or the charge of perjury could not lie."
*Beaulieu II*, 2004 WY 31, ¶ 8, 86 P.3d at 866 (*quoting Beaulieu I*, 2001 WY 33, ¶ 15, 20 P.3d at 527) (emphasis in original).

applied prospectively only, because such has always been the law, as was stated in *Beaulieu I*, three years earlier.[4] *See Bell v. Schell*, 2004 WY 153, ¶¶ 10–11, 16–36, 101 P.3d 465, 468, 469–76 (Wyo.2004); *Yoak v. Ide*, 2004 WY 32, ¶ 6, 86 P.3d 872, 874 (Wyo. 2004); *Beaulieu II*, 2004 WY 31, ¶¶ 6–15, 86 P.3d at 866–69; and *Beaulieu I*, 2001 WY 33, ¶¶ 12–18, 20 P.3d at 526–27.

[¶ 7] As to the third issue, that being prospective application of the ruling that governmental claims must meet the signature and certification requirements of the state constitution, we will add the following. Long ago, this Court declared that district courts do not have jurisdiction over governmental claims that were not presented to the governmental entity as required by Article 16, § 7 of the Wyoming Constitution. *Price v. State Highway Commission*, 62 Wyo. 385, 396, 167 P.2d 309, 312 (1946); *Utah Const. Co. v. State Highway Commission*, 45 Wyo. 403, 422–25, 19 P.2d 951, 954–55 (1933). In *Beaulieu I*, we held that, inasmuch as a notice of claim that did not meet the constitutional signature and certification requirements was not a valid claim, the period of limitation found in the Wyoming Governmental Claims Act did not begin to run upon presentment of such deficient claim. In reaching that conclusion, we commented upon the "jurisdictional impact of establishing for purposes of pleading the date of the claim and its appropriate certification. . . ." *Beaulieu I*, 2001 WY 33, ¶ 18, 20 P.3d at 527. The very clear holding of *Beaulieu I* was this:

> The requirement is clear that an itemized statement in writing is to be filed, which is certified under penalty of perjury. Such a statement must be signed by the claimant or the charge of perjury could not lie. In addition, it is to be filed with the officer or

officers charged with the duty to audit the claim.

*Id.* at ¶ 15, 20 P.3d at 527.

[¶ 8] This Court has always required that governmental claims comply with Article 16, § 7 of the Wyoming Constitution. Earlier cases primarily dealt with the issue of presentment of a claim to the governmental entity. *Wyoming State Highway Dept. v. Napolitano*, 578 P.2d 1342, 1345–46 (Wyo.1978); *Awe v. University of Wyoming*, 534 P.2d 97, 100 (Wyo.1975), *overruled on other grounds by Dye by Dye v. Fremont County School Dist. No. 24*, 820 P.2d 982 (Wyo.1991); *Price*, 167 P.2d at 312; *Utah Const. Co.*, 19 P.2d at 954–55. *Beaulieu I* established that governmental claims must comply not just with the presentment requirement of the constitution, but also with its signature and certification requirements. The only change in *Beaulieu II* was the recognition that, if these requirements were jurisdictional, they could not be waived as had erroneously been held in *Martinez v. City of Cheyenne*, 791 P.2d 949, 958 (Wyo.1990), *overruled by Beaulieu II*, 2004 WY 31, 86 P.3d 863.

[¶ 9] The collision that occasioned this lawsuit occurred approximately six months after the publication of *Beaulieu I*, which opinion clearly stated that governmental claims must be signed by the claimant under penalty of perjury. The appellant's notice of claim was presented to the appellee nearly ten months later—sixteen months after the publication of *Beaulieu I*. Thus, the later publication of *Beaulieu II* did not establish a new principle of law that was relevant to this determinative issue, making prospective application inappropriate.[5] *See Hanesworth v. Johnke*, 783 P.2d 173, 177 (Wyo.1989).

[¶ 10] In response to the dissent's earnest plea for equity in the form of prospective application of *Beaulieu II*, we feel compelled

---

4. It is important not to confuse the act of *compliance* with the constitution's signature and certification requirements with the act of *alleging* such compliance in a complaint. *Beaulieu I* reiterated that the former has always been the law. *Beaulieu II* applied the latter prospectively. In the instant case, the deficiency is the failure in compliance, not just in allegation.

5. The erroneous holding of *Martinez* that the constitutional signature and certification requirements were non-jurisdictional and could, therefore, be waived if not raised in the district court, is of no assistance to the appellant in the present case, where the issue *was* raised in the district court.

to review to some extent Wyoming's governmental claims jurisprudence, with our focus on subject matter jurisdiction. We begin with *Houtz v. Board of Com'rs of Uinta County*, 11 Wyo. 152, 70 P. 840, 842 (1902), where we noted that the constitutional and statutory requirements that governmental claims be verified "has for its object a showing of good faith and honesty in the presentation of the bill...." While deciding the case on other grounds, we noted that the notice of claim at issue was neither certified nor presented properly. *Id.* at 844. Perhaps presaging *Beaulieu I*, we found that a notice of claim that was not "presented in form" likely was not intended to be an attempt to comply with the claim statute. *Houtz*, 70 P. at 844. Significantly, we did not distinguish between the constitution's verification and presentment requirements in discussing whether the questioned instrument was a governmental claim.

[¶ 11] In *Utah Const. Co.*, 19 P.2d at 955 (*quoting Gates v. State*, 128 N.Y. 221, 228, 28 N.E. 373 (1891)), we made clear that, because the State cannot be sued except as it has, itself, allowed, compliance with the constitution and the statutes implementing the constitution's mandates is " 'a question of jurisdiction [and] could be raised at any time, and could not be waived....' " Thus, "[t]he objection that the plaintiff has failed to perform a condition that would have given him a right to sue raises a question of jurisdiction." *Id.* Furthermore, while the specific issue before the court was the failure to present a governmental claim, rather than to verify it, this Court held that implementing statutes "cannot be given a meaning that would permit an evasion of the mandatory constitutional provision[.]" *Id.* at 953. Carried into the present controversy, that means that the courts cannot interpret governmental claims statutes to allow less than the constitution requires; courts cannot give themselves jurisdiction over claims that are not signed or certified to under penalty of perjury.

[¶ 12] In *Price*, 167 P.2d at 312, we sustained the dismissal with prejudice of an amended petition because the governmental claim had never been presented to the state auditor. We did not use the phrase "subject

matter jurisdiction," but we described compliance with constitution and statute as "a condition to the right to sue[.]" *Id.* The same result was obtained in *Awe*, 534 P.2d at 99. Although *Awe* once again involved the failure to present a claim to the state auditor, we went beyond presentment and noted that "no sworn or certified claim of any sort" was presented. *Id.* at 98. We repeatedly stated the need for "a formal claim, in proper form," "[a] formal claim fitting the requirements of Art. XVI, § 7, of the Wyoming Constitution...." *Awe*, 534 P.2d at 99–100. Describing this requirement as a "condition precedent" to the filing of an action, we affirmed judgment in favor of the State. *Id.* at 99, 102. To the plaintiffs' allegation that they were misled by the State's assertion that it would not raise immunity, we responded:

> We are not here, however, deciding questions of sovereign immunity, except peripherally. We are discussing and deciding questions of serious and important prerequisite jurisdictional procedures, without which we might as well abandon all rules of orderly conduct of lawsuits, disregard the mandates of the legislature and place everything upon an equitable basis of what we, as judges, might think the arrangement from day to day ought to be. Plaintiffs' claim of estoppel is without merit; we cannot set up a government or court of men and not of law.

*Id.* at 105. The point is that there is not a hint in any of these cases that compliance with all of the requirements of Wyo. Const. art. 16, § 7 is not jurisdictional.

[¶ 13] In *Napolitano*, 578 P.2d at 1345–49, we reiterated the "condition precedent" principles of *Utah Const. Co.*, *Price*, and *Awe*, and applied those principles to an inverse condemnation claim. Five years later, in *Board of Trustees of University of Wyoming v. Bell*, 662 P.2d 410, 415 (Wyo.1983), we added emphasis to our recognition that compliance with claim-presentment requirements is jurisdictional by dismissing an appeal on our own motion for lack of subject matter jurisdiction. Three months later, we did the same in *Dee v. Laramie County*, 666 P.2d 957, 959 (Wyo.1983). In *Dye by Dye v. Fremont County School Dist. No. 24*, 820

P.2d 982, 984 (Wyo.1991), we agreed with the district court's dismissal for the same reason.

[¶ 14] Ten years after *Bell* and *Dee* were published, and two years after *Dye*, this Court took an even stronger stance. In *Amrein v. Wyoming Livestock Bd.*, 851 P.2d 769, 771 (Wyo.1993), we held that, to gain the jurisdiction of the district court in a governmental claims case, the complaint must allege not only presentment of the claim, but *timely* presentment under Wyo. Stat. Ann. § 1–39–113(a). Of particular relevance, given the dissenting opinion in the present case, is the fact that this Court applied this requirement to Mr. Amrein, rather than applying it prospectively only, and did so even though the matter had been raised by this Court, and not the parties. The point of *Amrein* is that plaintiffs must meet and allege compliance with governmental claims procedures *with specificity*.

[¶ 15] *Amrein* was followed in 1996 by two cases, *Boyd v. Nation*, 909 P.2d 323, 325–26 (Wyo.1996), and *Allen v. Lucero*, 925 P.2d 228, 230 (Wyo.1996), where district courts were found to lack subject matter jurisdiction due to claim presentment deficiencies. Both cases applied *Amrein's* "with specificity" rule. Similarly, in *Routh v. State ex rel. Wyoming Workers' Compensation Div.*, 952 P.2d 1108, 1116–17 (Wyo.), *cert. denied*, 525 U.S. 814, 119 S.Ct. 49, 142 L.Ed.2d 38 (1998), we held that the Wyoming Governmental Claims Act, being in derogation of the common law, had to be strictly construed, and required claim presentment compliance. Later, *Allen, Amrein,* and *Bell* were again followed in *Garnett v. Brock*, 2 P.3d 558, 561 (Wyo.2000). And in *Campbell County School Dist. v. Catchpole*, 6 P.3d 1275, 1281 (Wyo.2000), we reaffirmed the jurisdictional nature of the condition precedent of a timely presentment of a notice of claim to the state auditor.

[¶ 16] As mentioned above, the focus of these cases was upon the presentment or filing requirement of Article 16, § 7 of the Wyoming Constitution, and similar requirements found in governmental claims statutes. The signature and certification requirements of the same constitutional provision were not

directly addressed, no doubt because the failure before the Court was the failure to present or file *any* notice of claim. That focus began to change, however, with the publication of *Beaulieu I* in 2001.[6] *Beaulieu I* must be read carefully to understand what it does, and what it does not say. Its specific holding has already been quoted above; that is, to be valid, a governmental claim must be signed by the claimant and certified to under penalty of perjury. *Beaulieu I*, 2001 WY 33, ¶ 15, 20 P.3d at 527. Furthermore, "establishing for purposes of pleading the date of the claim *and its appropriate certification*" has "jurisdictional impact." *Id.* at ¶ 18, 20 P.3d at 527 (emphasis added). That is what *Beaulieu I* says. It does not say that the constitutional signature and certification requirements may be waived. Rather, *Beaulieu I* says that waiver, as recognized in *Martinez*, is not before the court, because signature and certification deficiencies were raised below. *Beaulieu I* is not an endorsement of *Martinez*.

[¶ 17] The line of cases just described led up to *Beaulieu II. Beaulieu II* is the case characterized by the dissent as a "bombshell." In truth, *Beaulieu II* is entirely consistent with the jurisprudence reviewed above, from *Houtz* in 1902, through *Beaulieu I*, 99 years later. There is, however, one case "out of whack" with all the others. That case is *Martinez*. In 1990, this Court declared that the constitutional signature and certification requirements were non-jurisdictional and could be waived. *Martinez*, 791 P.2d at 958. There is nothing in the precedent of this Court to explain this aberrant decision. Perhaps, as we noted in *Beaulieu II*, 2004 WY 31, ¶ 13, 86 P.3d at 868, the decision is aberrant because the *Martinez* holding relied upon *In re Bear River Irr. Dist.*, 51 Wyo. 343, 65 P.2d 686 (1937), a case that had nothing whatever to do with governmental claims or Article 16, § 7 of the Wyoming Constitution. Yet it is the existence of *Martinez* that fuels the dissent in the present case.

[¶ 18] The dissent contends that the erroneous holding of *Martinez* should be applied

---

6. We will later discuss *Martinez*, a 1990 case.

to the instant case to save the appellant's invalid claim, because *Martinez* was not overruled until *Beaulieu II* in 2004. We decline to do so, for three reasons. First, as recited above, the appellant's notice of claim was presented to the appellee sixteen months *after* the publication of *Beaulieu I*, where we clearly announced that, to be valid, governmental claims had to be signed by the claimant and certified to under the penalty of perjury. There is no reason not to expect the appellant to have complied with the law. Equity simply does not demand that this Court step in to prevent the natural consequences of the appellant's own dereliction. In particular, there is nothing to suggest that the appellant was actually misled by the fact that *Martinez* existed.

[¶ 19] The second reason that we decline to validate the appellant's invalid claim via *Martinez* is that, even if the appellant had been aware of *Martinez*, which has not been shown, *Martinez* did not tell the appellant not to sign and certify his claim. Rather, *Martinez* merely held that such could be waived if not raised in the district court. Inasmuch as these requirements *were* raised in the district court, waiver is not even available to the appellant.

[¶ 20] Third, we decline to apply our holding herein prospectively only because, with the exception of *Martinez*, we have for decades considered compliance with Article 16, § 7 of the Wyoming Constitution and its implementing statutes to be jurisdictional, and subject matter jurisdiction cannot be waived. Even more importantly, subject matter jurisdiction can be neither created nor destroyed by judicial fiat. 21 C.J.S. *Courts* §§ 12, 18, 56, 64 (1990 & 2004 Cum. Supp.). What that means is that the erroneous holding of *Martinez* does not allow the district courts to acquire jurisdiction that they do not have. *Id.* at § 90.[7] *Martinez* did not create jurisdiction where none existed. *Pickle v. Board of County Com'rs of County of Platte*, 764 P.2d 262, 264 (Wyo. 1988), is not a holding to the contrary. *Pickle* simply says that "the district courts have subject matter jurisdiction to hear claims filed under the [Wyoming Governmental Claims Act]." *Id.* We already know that from Wyo. Stat. Ann. § 1–39–117(a) (LexisNexis 2003).[8] What we also already know is that a claim that does not meet the constitutional signature and certification requirements is not a valid claim under the act. *Beaulieu I*, 2001 WY 33, ¶ 17, 20 P.3d at 527; *see also Bell*, 2004 WY 153, ¶¶ 10–11, 101 P.3d at 468; *Yoak*, 2004 WY 32, ¶ 6, 86 P.3d at 874; and *Beaulieu II*, 2004 WY 31, ¶ 8, 86 P.3d at 866.

[¶ 21] Finally, if we are to concern ourselves with *stare decisis*, as we should, then we should refuse to deviate again from the law, as we did in *Martinez*. *Martinez*, not *Beaulieu II*, was the bombshell. Never before, or since, have we said that a governmental claim need not be in compliance with the constitution.[9] We must be especially careful that the siren song of equity does not cause us to abandon the law in jurisdictional

7. Here, we are concerned with erroneous decisions on questions of law. By way of example, a Wyoming state district court cannot acquire subject matter jurisdiction over a bankruptcy case simply by declaring that it has such jurisdiction. On the other hand, where the question is one of fact, the court may have jurisdiction over the general class of cases, but not over the particular case before it. The district courts have jurisdiction over the general class of *cases brought as* governmental claims under the Wyoming Governmental Claims Act, but they do not have jurisdiction over cases where the claim does not meet constitutional or statutory requirements. Otherwise, the district court could adjudicate cases in which the State has not consented to be sued.

8. "Original and exclusive jurisdiction for any claim under this act shall be in the district courts of Wyoming." Wyo. Stat. Ann. § 1–39–117(a).

9. In *Rissler & McMurry Co. v. Wyoming Highway Dept.*, 582 P.2d 583, 586–87 (Wyo.1978), we allowed substantial compliance with, rather than strict adherence to, *statutory* claim presentation procedures. In the minds of the three concurring justices, equitable considerations prevailed where a claim was presented, but to the wrong authority. In dissent, however, the two remaining justices opined that lowering the standard for claim filing to substantial compliance did, in effect, judicially deprive the legislature of its right to determine how and when the State could be sued, and violated the doctrine of separation of powers. *Id.* at 590 (Thomas, J., dissented, with which Raper, J., joined).

matters. Subject matter jurisdiction is determined in constitutional conventions and in legislative halls, not in courtrooms.

## CONCLUSION

[¶ 22] The appellant did not present to the appellee, during the mandatory two-year period of Wyo. Stat. Ann. § 1–39–113(a), a notice of claim signed by the claimant under penalty of perjury, as required by Article 16, § 7 of the Wyoming Constitution. The appellant's belated effort to cure that deficiency was ineffective because his cause of action ceased to exist when the statutory period expired. The presentment of a valid claim being jurisdictional, the district court was correct in determining that it lacked subject matter jurisdiction over the appellant's claim. Because this Court can have no better jurisdiction than did the district court, we dismiss this appeal. *Lankford v. City of Laramie,* 2004 WY 143, ¶ 23, 100 P.3d 1238, 1244 (Wyo. 2004); *Platte Development Co. v. State, Environmental Quality Council,* 966 P.2d 972, 974 (Wyo.1998); *Sheridan Retirement Partners v. City of Sheridan,* 950 P.2d 554, 556–57 (Wyo.1997).

BURKE, Justice, dissenting, with whom KITE, Justice, joins.

[¶ 23] In *Beaulieu II,* this Court held that failure to comply with the constitutional certification and execution requirements of Article 16, § 7 of the Wyoming Constitution deprived the district court of subject matter jurisdiction. The majority rejects Mr. Wooster's contention that the holding in *Beaulieu II* should be applied prospectively only. Because I am convinced that the subject matter classification set forth in *Beaulieu II* should not be applied retrospectively, I respectfully dissent.

[¶ 24] This Court has on several occasions considered whether a change in law should operate retrospectively or prospectively. In *Nehring v. Russell,* 582 P.2d 67, 80 (Wyo.1978), this Court declared Wyoming's guest statute unconstitutional and limited its holding to prospective application.

Further, cognizant that the determination is ours to make, we conclude that in consideration of all the factors and any

prior reliances involved, our holding should be applied prospectively only, i.e., to this action and all causes of action accruing after 30 days following the date of this decision. (citations omitted).

[¶ 25] We determined in *Ostwald v. State,* 538 P.2d 1298 (Wyo.1975), that a prior decision of the Court declaring a criminal statute unconstitutional should be applied prospectively only.

*Linkletter v. Walker,* 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, (footnote 10 omitted) brought to a climax and explained the entire field of retroactivity, bringing into focus the actuality and practicality of prospective rather than retroactive application, of court decisions declaring a fundamental phase of the criminal law unconstitutional, in any sphere. It laid to rest as out of tune with the times the concept of *Norton v. Shelby County,* supra [1886, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178]. It settled most matters of controversy and concluded that, with respect to reaching a determination of whether a decision should be retrospective or prospective: there is no distinction drawn between civil and criminal litigation; a ruling may be prospective only and it may apply to the invalidity of statutes (footnote 11 omitted) as well as to the effect of a decision overturning long-established common law rules; the constitution neither prohibits nor requires retrospective effect and the federal Constitution has no voice upon the subject; and, the accepted rule today is that in appropriate cases in the interests of justice, a court may make its decision prospective.

*Id.* at 1302–1303.

[¶ 26] In *Oroz v. Board of County Commissioners of Carbon County,* 575 P.2d 1155, 1159 (Wyo.1978), this Court prospectively applied its holding abolishing governmental immunity.

The final question herein is the application of this decision. The court is fully cognizant that a long reliance has been placed upon the rule of immunity and that it will raise certain problems which must be considered and proper arrangements

made. Based upon these considerations, the doctrine of governmental immunity as it is applied to counties and all other similar governmental subdivisions is abolished as to any and all claims arising on and after July 1, 1979.

[¶ 27] In *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo.1983), this Court recognized a cause of action against liquor vendors in favor of persons injured by an intoxicated driver. Two years later, in *Adkins v. Sky Blue, Inc.*, 701 P.2d 549, 552 (Wyo.1985), we held that such cause of action is limited to prospective application. In reaching its determination the Court noted:

It has been repeatedly stated that where a decision might produce substantial inequitable results if applied retroactively, it is appropriate to avoid such hardship or injustice by providing for prospective operation only.

[¶ 28] In *Hanesworth v. Johnke*, 783 P.2d 173, 177 (Wyo.1989)(emphasis in original), we adopted a three part test for determination of prospective application.

**First,** the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. **Second,** it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker,* [381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965)]. **Finally,** we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma,* [395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969)].

We must apply these standards in order to determine if the "subject matter jurisdiction"

holding of *Beaulieu II*, should be applied prospectively only.

[¶ 29] Initially, we must determine "if the new rule explicitly overruled a past precedent of this court." *Id.* at 177 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 325, 107 S.Ct. 708, 714, 93 L.Ed.2d 649 (1987)). According to the majority, "... the holding in *Beaulieu II* that a notice of claim must meet the requirements of Article 16, § 7 of the Wyoming Constitution is not applied prospectively only, because such has always been the law, as was stated in *Beaulieu I,* three years earlier." I disagree.

[¶ 30] I do not take issue with the concept that this Court has previously required compliance with the constitutional requirements of Article 16, § 7. I also concede that *Beaulieu I* reaffirmed the compliance requirement. My point of departure relates to the elevation of non-compliance with the execution and certification requirements of Article 16, § 7 to the level of a subject matter jurisdiction defect.

[¶ 31] Prior to *Beaulieu II,* an execution defect that violated Article 16, § 7 was treated by this Court as "nothing more than a defect or an irregularity that is not jurisdictional." *Martinez v. City of Cheyenne,* 791 P.2d 949, 958 (Wyo.1990). In *Martinez,* we rejected appellant's contention that a plaintiff's failure to certify a claim pursuant to Article 16, § 7 deprived the Court of subject matter jurisdiction.

In the last issue asserted in its appeal, the State contends that the trial court did not have jurisdiction to proceed because Fleetwood failed to comply with Wyo. Const. art. 16, § 7. This constitutional provision requires, *inter alia,* that any claim against the State be "certified to under penalty of perjury." Wyo. Const. art. 16, § 7. Specifically, the State asserts that Mr. and Mrs. Martinez, acting on behalf of Fleetwood, failed to make the certification under penalty of perjury when they first presented their claim and that, since proper filing of a claim is a condition precedent to suit, their claim cannot be brought because it was not properly filed. *Wyoming State Highway Department v. Napolitano,* 578 P.2d 1342 (1978); *Awe v. University of*

*Wyoming,* 534 P.2d 97 (1975); *Utah Construction Company v. State Highway Commission,* 45 Wyo. 403, 19 P.2d 951 (1933).

This particular contention by the State is raised for the first time in this appeal. The point was never argued to the district court. The State agrees that this is true, but it contends that an omission of the correct certification results in a failure of subject matter jurisdiction, and the issue can be raised at any time in the proceeding. We do not agree with this contention. The failure to verify or certify as the constitution now reads is nothing more than a defect or an irregularity that is not jurisdictional. *In re Bear River Irrigation District,* 51 Wyo. 343, 65 P.2d 686 (1937). The effect of that decision is that this alleged defect is not jurisdictional and, for that reason, the defense cannot be raised for the first time on appeal.

*Id.* at 958.

[¶ 32] In *Beaulieu I,* we reiterated the distinction, from a subject matter jurisdiction perspective, between the execution and certification requirements of Article 16, § 7 and "filing" or "presentment" requirements.

> While the court has ruled that the execution requirements of art. 16, § 7 can be waived by failing to assert the issue in the trial court, it has not held that the requirement of filing or presenting the claim is subject to waiver. Instead, we have treated the allegation of the filing of a claim as jurisdictional.

*Beaulieu I,* ¶ 14. In *Beaulieu II,* this Court elevated compliance with the signature and certification requirements of Article 16, § 7 to subject matter jurisdiction status. In doing so, it specifically overruled *Martinez.*

> We have, in fact, previously stated [in *Martinez* ] that the constitutional signa-

ture and certification requirements, unlike the statutory filing requirements, are not jurisdictional:

> . . .

> We now believe that Martinez was wrongly decided and that it must be overruled.

*Beaulieu II,* ¶ 13.

[¶ 33] The new subject matter jurisdiction status established in *Beaulieu II* is significant. The lack of subject matter jurisdiction is a fundamental defect which cannot be cured by waiver, consent of the parties or the passage of time. *Weller v. Weller,* 960 P.2d 493, 496 (Wyo.1998). Subject matter jurisdiction can be challenged at any stage of the proceedings by a party or by the court. *Brunsvold v. State,* 864 P.2d 34, 36 (Wyo. 1993). A court that does not have subject matter jurisdiction ". . . lacks any authority to proceed and any decision, judgment or other order is, as a matter of law, utterly void and of no effect for any purpose." *Routh v. State ex rel. Workers' Comp. Div.,* 952 P.2d 1108, 1114 (Wyo.1998).[1]

[¶ 34] In summary, prior to *Beaulieu II,* signature and certification defects in the claim could be waived if not raised in a timely manner by the governmental entity. After *Beaulieu II,* such defect could not be waived. *Beaulieu II* explicitly overruled clear past precedent of this Court. It established a new principle of law.

[¶ 35] In order to satisfy the second prong of the *Hanesworth* test, we must determine if the purpose of the new rule would be satisfied by retroactive application. This second prong analysis is inextricably intertwined with the "hardship" and "injustice" criteria set forth in the third part of the *Hanesworth* test. In *Hanesworth,* we treated the issue as follows:

---

1. I do not concede that execution and certification compliance with Article 16, § 7 implicates subject matter jurisdiction. We have previously held that district courts have subject matter jurisdiction to hear claims filed under the Wyoming Governmental Claims Act. *Pickle v. Board of County Com'rs of County of Platte,* 764 P.2d 262, 264 (Wyo.1989). Because this case can be determined on the narrower issue of prospective application, such a discussion is not necessary at

this time. However, the majority's declaration that "such has always been the law" raises concerns. If *Beaulieu II* is not limited to prospective application and, if all actions of any court that does not have subject matter jurisdiction are "utterly void and of no effect for any purpose," are all governmental claim cases, including *Martinez,* now open to jurisdictional challenge for lack of compliance with Article 16, § 7?

The purpose of the actual notice requirement is to satisfy the due process requisite stated in *Tulsa Professional Collection Services, Inc. [v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)] and established in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). While that purpose may be furthered by retroactive application of the *Tulsa Professional Collection Services, Inc.* decision, we conclude that the benefit of avoiding hardships created by retroactivity is an ample basis for nonretroactive application.

*Hanesworth*, 783 P.2d at 177.

[¶ 36] The stated purpose of requiring certification and execution compliance is taxpayer protection. *Beaulieu II*, ¶ 13. In governmental claim cases which come before this Court, the governmental entity has had the opportunity to contest the validity of the claim and assert all defenses which it might have to the claim. Taxpayers are protected. Even if it is assumed that the new subject matter jurisdiction classification created in *Beaulieu II* increases taxpayer protection, this Court should properly recognize, as it did in *Hanesworth*, "... that the benefit of avoiding hardships created by retroactivity is an ample basis for non-retroactive application." *Hanesworth*, 783 P.2d at 177.

[¶ 37] The third prong of the *Hanesworth* test requires an examination of the hardship or injustice generated by retroactive application. *Id.* The hardship and injustice to claimants by retroactive application is dramatically illustrated by the facts of this case.

[¶ 38] Mr. Wooster was allegedly injured in a motor vehicle collision caused by the negligence of appellee's employee. On November 4, 2002, Mr. Wooster filed his complaint. The answer was filed November 21, 2002. Appellee's answer failed to set forth any allegation that Mr. Wooster had failed to comply with the governmental claims act or Article 16, § 7 of the Wyoming Constitution. The case proceeded toward trial for the next year and a half. Trial was scheduled to commence May 10, 2004.

[¶ 39] On March 25, 2004, this Court dropped the *Beaulieu II* bombshell. The next day, appellee filed its motion for summary judgment asserting, for the first time, a claim of lack of subject matter jurisdiction for failure to meet the execution and certification requirements of Article 16, § 7. Mr. Wooster immediately filed an amended claim in a futile effort to comply with Article 16, § 7. The amended claim was filed too late to meet the time requirements of Wyo. Stat. Ann. § 1–39–114.[2] The district court, noting that it had "some sympathy for the position Wooster finds himself in," granted the motion for summary judgment on the basis of a lack of subject matter jurisdiction.

[¶ 40] At the time appellee filed its answer, *Martinez* set forth the applicable law. Pursuant to *Martinez*, certification and execution defects in a claim could be waived. Appellee failed to challenge Mr. Wooster's compliance with the execution and certification requirements of Article 16, § 7 until six weeks prior to trial and only after the time had expired for Mr. Wooster to correct errors in his claim. The majority, by failing to provide for prospective application of *Beaulieu II*, delivers a catastrophic blow to Mr. Wooster and a corresponding windfall to appellee. The result causes a "hardship" and "injustice" to Mr. Wooster and others similarly situated which satisfies the third prong of the *Hanesworth* test.

[¶ 41] The majority's justification for its decision is also troubling in a broader and more fundamental context. The majority refuses to limit *Beaulieu II* to prospective application because "such has always been the law." This assertion is difficult, if not impossible, to reconcile with the doctrine of *stare decisis*.

[¶ 42] The doctrine of *stare decisis* embodies a concept that serves as "the basis of Anglo–American common law." *Borns ex. rel Gannon v. Voss*, 2003 WY 74, ¶ 24, 70 P.3d 262, ¶ 24 (Wyo.2003). We have emphasized the importance of the doctrine. *Stare decisis* is:

**2.** If Mr. Wooster's failure to comply with Article 16, § 7 had been raised in the original answer, Mr. Wooster would have had several months to file an amended claim before his claim would have been time barred.

... the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact.

*Id.*, ¶ 25. We have observed:

... *stare decisis* "furthers the ' "even-handed, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." ' "

*Id.* (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991)).

[¶ 43] We have also recognized that *stare decisis* is not a law, but a policy and that we should depart from precedent when necessary "to vindicate plain, obvious principles of law and remedy continued injustice ..." *Id.* However, such departure from prior precedent "should occur slowly, deliberately after much experience, and if possible so as not to affect vested rights." *Id.* at 272.

[¶ 44] In *Martinez*, this Court held that failure to comply with the execution and certification requirements of Article 16, § 7 is not a subject matter jurisdiction defect. In *Beaulieu II*, decided 14 years later, we declared that lack of compliance with the execution and certification requirements is a subject matter jurisdiction defect. This holding of *Beaulieu II* is a departure from prior

precedent. It did not occur "slowly, deliberately after much experience." It significantly affected Mr. Wooster and others similarly situated.

[¶ 45] Our past precedent also includes that body of case law epitomized by *Hanesworth* which allows prospective application of new rules of law in appropriate cases. Proper application of the *Hanesworth* principles nurtures *stare decisis* because it allows development in the common law as occurred in *Beaulieu II* without negatively impacting those affected by *Martinez*.

[¶ 46] The common thread running through our decisions involving issues of prospective application is evaluation of the potential inequities resulting from retroactive application of the new rule of law.[3] Summary judgment undoubtedly resulted in hardship and injustice to Mr. Wooster. He was deprived of the opportunity to have his claim determined on the merits by the unfortunate timing of the *Beaulieu II* decision. Retrospective application will cause similar problems for other claimants in Mr. Wooster's position. Such harsh results can, and should, be avoided by limiting *Beaulieu II* to prospective application.

[¶ 47] Prospective application will not prejudice any governmental entity which, pursuant to the *Martinez* requirements, timely raised the issue of claimant's failure to comply with Article 16, § 7. If a governmental entity has timely asserted lack of compliance, the governmental entity should prevail if plaintiff's claim fails to satisfy the requirements of Article 16, § 7.[4] If the governmental

---

**3.** Appellee relies upon *GID v. Wyoming State Bd. of Control*, 926 P.2d 943 (Wyo.1996), in support of its position that *Beaulieu II* should be applied retrospectively. Such reliance is misplaced. In *GID*, this Court reasserted its position that the appropriateness of prospective application "... depends on whether a substantial injustice would otherwise occur." *Id.* at 949 (quoting *Hofeldt v. Eyre*, 849 P.2d 1295, 1298 (Wyo.1993) (Cardine, J., specially concurring)). The Court in *GID* rejected prospective application because GID "... failed to explain to our satisfaction how a substantial injustice would befall it when it had notice that its supplemental right might be subject to abandonment for at least a year after our *Hofeldt* decision and yet, it took no preventive measures to ensure the safety of its water right."

**4.** See e.g. *Yoak v. Ide*, 2004 WY 32, 86 P.3d 872 (Wyo.2004) and *Bell v. Schell*, 2004 WY 153, 101 P.3d 465 (Wyo.2004). Both cases were decided by this Court after *Beaulieu II*. In neither case was the Court required to address the issue of prospective application. Had the Court been required to address the issue it would not have resulted in a different outcome. In both cases, the governmental entity timely raised lack of compliance with Article 16, § 7 in their responsive pleading. The governmental entity would have prevailed because of plaintiffs' noncompliance regardless of whether the law of *Martinez* or *Beaulieu II* was applied. In *Beaulieu I* lack of compliance with the execution and certification requirement of Article 16, § 7 was raised by Beaulieu. Upon remand, the governmental enti-

entity has failed to timely raise the compliance issue, the claim will be determined on the merits. A determination on the merits will provide protection to the taxpayers of this state by insuring that the claim is valid.

[¶ 48] Two other issues deserve comment. The majority notes that Mr. Wooster's claim was presented to appellee 16 months after publication of *Beaulieu I*. It is difficult to understand the relevancy of that factor in determining whether *Beaulieu II* should be limited to prospective application. As previously indicated, *Beaulieu I* did not hold that a certification defect was jurisdictional. More significantly, such reasoning ignores the reality that retroactive application of *Beaulieu II* will also negatively impact claims which predate *Beaulieu I*. At least three such cases are pending before the Court.

[¶ 49] The majority also relies upon the fact that appellee eventually raised the issue of compliance at the district court level to support its holding. Merely raising the defense is not sufficient. The defense must be asserted in a timely fashion. Prejudice to the opposing party is a factor that must be weighed in determining whether the defense was timely. "The controlling consideration is whether the adverse party is prejudiced by the moving party's delay in raising the defense." *Pickle* at 264. Reversal of summary judgment would allow the district court to determine if appellee's late assertion of the defense unduly prejudiced Mr. Wooster.

[¶ 50] In conclusion, this Court in *Beaulieu II* created a new rule of law by overruling *Martinez* and elevating compliance with the certification and execution requirements of Article 16, § 7 to subject matter jurisdiction status. Retroactive application of *Beaulieu II* is devastating to Mr. Wooster and similarly situated claimants. We have consistently rejected retroactive application of a new rule of law where such application will produce substantial inequitable results. This is such a case. The concurring opinion in *Giles v. State*, 96 P.3d 1027, 1046 (Wyo.2004) states: "[T]he doctrine of *stare decisis* de-

mands respect. But the underlying principle of our system of justice is justice." If *Beaulieu II* is limited to prospective application we maintain consistency with the doctrine of *stare decisis* and eliminate any injustice caused by overruling *Martinez*.

[¶ 51] The decision of the district court should be reversed.

---

ty timely raised lack of compliance with Article 16, § 7 regarding the second claim filed by Beaulieu. The result in *Beaulieu II* would have been

the same for Beaulieu even if the execution and certification defect was not determined to be of subject matter jurisdiction magnitude.